## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services ("HHS") (collectively, the "United States"); SavaSeniorCare, LLC, SavaSeniorCare Administrative and Consulting, LLC, and SSC Equity Holdings, LLC, successor by merger to SSC Submaster Holdings, LLC (collectively, "Sava"); and Relators Rita Hayward, Trammel Kukoyi, and Terrence Scott (collectively, the "Tennessee Relators") and Relators James Thornton and Barbara Roberts (collectively, the "Pennsylvania Relators") (collectively, the Tennessee Relators with the Pennsylvania Relators, "Relators") (hereafter, the United States, Sava, and Relators are collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A.      Sava, through its subsidiaries, provides skilled nursing services and rehabilitation therapy services, including physical, occupational, and speech therapy, to patients at numerous skilled nursing facilities ("SNFs") nationwide, and bills the Medicare Program, Medicaid Program, and TRICARE Program for such services.

B.      On August 26, 2011, relator Rita Hayward filed a *qui tam* action in the United States District Court for the Middle District of Tennessee captioned *United States ex rel. Hayward v. SavaSeniorCare, Inc., et al.*, Civil Action No. 3:11-0821, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Hayward Action"); on March 17, 2015, relator Hayward filed a first amended complaint.  On December 6, 2011, relator Trammel Kukoyi filed a *qui tam* action in the United States District Court for the Southern District of Texas captioned *United States, et al. ex rel. Kukoyi v. SavaSeniorCare, LLC, et al.*, Civil Action No. 11-4216, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b)

(the "Kukoyi Action"); on July 30, 2015, relator Kukoyi filed a first amended complaint. On

October 7, 2015, the Kukoyi Action was transferred to the United States District Court for the

Middle District of Tennessee and assigned Civil Action No. 3:15-1102. On November 20, 2013,

relator Terrence Scott filed a *qui tam* action in the United States District Court for the Western

District of Texas captioned *United States ex rel. Scott v. SavaSeniorCare, Inc., et al.*, Civil

Action No. SA-13-CA-1055-FB, pursuant to the *qui tam* provisions of the False Claims Act, 31

U.S.C. § 3730(b) (the "Scott Action"); on February 18, 2014, Relator Scott filed a first amended

complaint. On April 8, 2015, the Scott Action was transferred to the United States District Court

for the Middle District of Tennessee and assigned Civil Action No. 3:15-0404. Among other

things, the Tennessee Relators' *qui tam* complaints alleged that Sava entities violated the False

Claims Act by submitting false claims and statements to Medicare, Medicaid, and TRICARE for

payment of services pursuant to the skilled nursing facility benefit that were not reasonable or

medically necessary. On July 20, 2015, the Hayward and Scott Actions were consolidated; on

October 21, 2015, the Kukoyi Action was consolidated with the previously-consolidated

Hayward and Scott Actions. The Hayward Action, Kukoyi Action, and Scott Action are

hereafter collectively referred to as the "Tennessee Actions."

       C.     On July 21, 2015, the United States filed a notice of partial intervention in the

previously-consolidated Hayward Action and Scott Action; on October 19, 2015, the United

States filed a notice of partial intervention in the Kukoyi Action. On October 26, 2015, the

United States filed its Consolidated Complaint in Intervention in the Tennessee Actions against

Sava seeking treble damages and civil penalties arising from violations of the False Claims Act

and damages and other monetary relief under the common law theories of unjust enrichment and

payment by mistake for the alleged wrongful conduct of Sava.

D.      On February 22, 2016, Relator James Thornton filed a *qui tam* action in the

United States District Court for the Eastern District of Pennsylvania captioned *United States, et*

*al. ex rel. Doe v. SavaSeniorCare, Inc., et al.*, Civil Action No. 16-CV-0840, pursuant to the *qui*

*tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Pennsylvania Action"); on

March 26, 2021, Relator Thornton and additional Relator Barbara Roberts filed a first amended

complaint in the Pennsylvania Action, which is now captioned *United States, et al. ex rel.*

*Thornton, et al. v. SavaSeniorCare, Inc., et al.*, Civil Action No. 16-CV-0840.  In the

Pennsylvania Action, Relators allege that Sava caused the submission of false claims to

Medicare and Medicaid, and other government-funded health care insurance programs, for

substandard and understaffed nursing home services.  The United States will intervene in the

Pennsylvania Action for purposes of settlement simultaneous with entering into this Agreement.

E.      Collectively, the Tennessee Actions and the Pennsylvania Actions constitute the

"Civil Actions."

F.      Sava has entered into, or will be entering into separate settlement agreements with

certain states (hereafter referred to as the "Medicaid Coinsurance Participating States") that will

be receiving settlement funds from Sava, as described in Paragraph 1 of this Agreement and as

further described in the separate settlement agreements between Sava and the Medicaid

Coinsurance Participating States, pursuant to the Covered Conduct described in Paragraph I.2 of

this Agreement (the "State Medicaid Coinsurance Settlement Allegations").

G.      Sava has entered into, or will be entering into, separate settlement agreements

with certain states (hereafter referred to as the "Medicaid Quality of Care Participating States")

that will be receiving settlement funds from Sava, as described in Paragraph 1 of this Agreement

and as further described in the separate settlement agreements between Sava and the Medicaid

Quality of Care Participating States, pursuant to the Covered Conduct described in Paragraph I.3

3

of this Agreement (the "State Medicaid Quality of Care Settlement Allegations").  The State

Medicaid Coinsurance Settlement Allegations and the State Medicaid Quality of Care Settlement

Allegations shall be addressed in separate sections of the State settlement agreements between

the Medicaid Coinsurance Participating States, the Medicaid Quality of Care Participating States,

and Sava (collectively referred to as the "State Medicaid Settlement Agreements").

       H.     The United States contends that Sava submitted or caused to be submitted claims

for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C.

§§ 1395-1395lll ("Medicare") and the Medicaid Program, 42 U.S.C. §§ 1396-1396w-5

("Medicaid").

       I.1.    The United States contends that it has certain civil claims against Sava for

damages and penalties arising from Sava's conduct of allegedly submitting or causing the

submission of false claims to Medicare as alleged in the United States' Consolidated Complaint

in Intervention in the Tennessee Actions during the period from October 1, 2008 through

September 30, 2012.

       I.2.    The United States also contends that it and the Medicaid Coinsurance

Participating States have certain civil claims for damages and penalties against Sava arising from

Sava's conduct of allegedly submitting or causing the submission of false claims to Medicaid

during the period from October 1, 2008 through September 30, 2012 for coinsurance amounts for

rehabilitation therapy services for beneficiaries who were eligible for both Medicare and

Medicaid, for whom Sava also allegedly submitted or caused the submission of false claims to

Medicare as alleged in the United States' Consolidated Complaint in Intervention in the

Tennessee Actions.

       I.3.    The United States further contends that it and the Medicaid Quality of Care

Participating States have certain civil claims for damages and penalties against Sava for

4

submitting or causing the submission of false claims for payment to Medicare and Medicaid for grossly and materially substandard and/or worthless nursing services during the period from January 1, 2008 through December 31, 2018. The United States and the Medicaid Quality of Care Participating States also contend that some of the nursing services provided were grossly and materially substandard and/or worthless in part because Sava failed to provide care to residents that meets federal standards of care and federal statutory and regulatory requirements, including failing to have sufficient staffing in certain facilities to meet certain residents' needs. The United States contends that, in certain skilled nursing facilities, Sava failed to follow appropriate pressure ulcer protocols and appropriate falls protocols, and failed to appropriately administer medications to some of the residents to avoid medication errors.

I.4.    The conduct described in Paragraphs I.1, I.2, and I.3 above is hereafter referred to as the "Covered Conduct."

I.5.    Sava denies the United States' allegations in this Paragraph I.

J.    The Agreement is neither an admission of liability by Sava nor a concession by the United States that its claims are not well founded.

K.    The Tennessee Relators claim entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Agreement as it relates to the Covered Conduct described in Paragraph I.1, and to the Tennessee Relators' reasonable expenses, attorneys' fees and costs. Relator Kukoyi also claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Agreement as it relates to the Covered Conduct described in Paragraph I.2, and to Relator Kukoyi's reasonable expenses, attorneys' fees and costs.

L.    The Pennsylvania Relators claim entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Agreement as it relates to the Covered Conduct described in Paragraph I.3, and to the Pennsylvania Relators' reasonable expenses, attorneys' fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

<u>TERMS AND CONDITIONS</u>

1.    Sava shall pay to the United States, the Medicaid Coinsurance Participating States, and the Medicaid Quality of Care Participating States, collectively, the payments set forth as follows:

a.    <u>Upfront Payment</u>

i.    No later than five (5) days after the Effective Date of this Agreement, Sava shall make a payment to the United States in the amount of Ten Million, Three Hundred Thirty Five Thousand, One Hundred Ninety Six Dollars ($10,335,196.00) (the "Federal Upfront Payment"), plus interest at a rate of 1.125% per annum from February 8, 2021, for the Covered Conduct. Of this total Federal Upfront Payment, Nine Million, Four Hundred Sixty-Two Thousand, Two Hundred Ninety One Dollars ($9,462,291.00) is the Federal Upfront Payment amount for the Covered Conduct described in Paragraph I.1; Three Hundred Forty-Nine Thousand, One Hundred Sixty Two Dollars ($349,162.00) is the Federal Upfront Payment amount for the federal share of the Covered Conduct described in Paragraph I.2; and Five Hundred Twenty-Three Thousand, Seven Hundred Forty-Three Dollars ($523,743.00) is the Federal Upfront Payment amount for the federal share of the Covered Conduct described in Paragraph I.3.

ii.    Pursuant to the State Medicaid Settlement Agreements, Sava shall make payments to the Medicaid Coinsurance Participating States and the Medicaid Quality of Care Participating States, collectively, of amounts totaling Eight Hundred Seventy Two Thousand, Nine Hundred Five Dollars ($872,905.00) (the "State Upfront Payments") (that amount being comprised of $349,162.00 for the Covered Conduct described in Paragraph I.2 and

$523,743.00 for the Covered Conduct described in Paragraph I.3), plus interest at a rate of

1.125% per annum from February 8, 2021, for the Covered Conduct described in Paragraphs I.2

and I.3 and as further described in the State Medicaid Settlement Agreements (the "State Upfront

Payments").

        iii.     The Federal Upfront Payment and the State Upfront Payments

collectively comprise the Upfront Payment Amount.

        b.     <u>Contingency Payments</u>

        i.     <u>Revenue Contingency</u>.

        a)     If the annual Adjusted Net Revenue, as defined below in Paragraph

1.b.i.b, of the facilities listed on Exhibit A (the "Retained

Facilities") exceeds the Adjusted Threshold, as defined below in

Paragraph 1.b.i.c, in each fiscal year 2021, 2022, 2023, 2024,

2025, or 2026, Sava shall pay in furtherance of this settlement an

amount equal to Five Percent (5%) of the Adjusted Net Revenue

above the Adjusted Threshold ("Excess Revenue Payment").  The

total maximum amount potentially to be paid in furtherance of this

settlement under this Revenue Contingency for all years in the

aggregate is capped at Seven Million Dollars ($7,000,000.00).

Sava shall pay any Excess Revenue Payment in accordance with

Paragraph 1.b.iii within 30 calendar days after the completion of

Sava's annual audited financial statements.  On the same date Sava

pays any Excess Revenue Payment, Sava shall submit to the

United States its annual audited financial statements, calculation of

the Excess Revenue Payment as shown on Exhibit B, and all

documents and information reasonably necessary to determine the accuracy of the Adjusted Net Revenue and Adjusted Threshold calculations.  The calculations and supporting documents and information shall be certified by Sava's Chief Executive Officer or Chief Financial Officer.

b)  Annual Net Revenue is defined as billable revenues for services provided by the Retained Facilities in each fiscal year.  With respect to those Retained Facilities that participate in Upper Payment Limit Reimbursement Programs and are both leased and managed by subsidiaries of Sava, Annual Net Revenue will be derived from consolidating the revenue in each fiscal year from nursing home operations of the manager and operator of the Retained Facility.  Adjusted Net Revenue is defined as Annual Net Revenue for the Retained Facilities for each fiscal year, net of: (i) reserves for third party payors, (ii) contractual adjustments, (iii) charity care adjustments, (iv) all funds received from a third-party payor that must be dedicated to expenditures specified by the payor; and (v) for any Retained Facilities divested after the Effective Date of this Agreement ("Divested Facilities"), the Annual Net Revenue for those facilities for the fiscal year immediately preceding the time of divesture.

c)  Adjusted Threshold is defined as the Starting Threshold, as defined in this subparagraph 1.b.i.c, less the Annual Net Revenue for any Divested Facilities for the fiscal year immediately preceding the

8

time of divesture.  For 2021, the Starting Threshold shall be One Billion Three Hundred Million Dollars ($1,300,000,000.00).  For fiscal years 2022, 2023, 2024, 2025, and 2026, the Starting Threshold shall be the Adjusted Threshold calculated at the end of the prior fiscal year.

ii.     <u>Insurance Contingency.</u>  If Sava and/or its parent receive proceeds at any time from a settlement or final judgment in *SavaSeniorCare, LLC v. Starr Indemnity and Liability Company, et al.*, Case No. 1:18-cv-01991-MHC (N.D. Ga.), or any other litigation against any insurance carrier related to the Tennessee Actions, Sava will remit Fifty Percent (50%) of any such proceeds, net of all litigation fees and costs incurred by Sava in pursuing such proceeds, in furtherance of this settlement.  Within five (5) business days of any such settlement or judgment, Sava shall provide the United States with a copy of any such settlement agreement or judgment and a certified copy of all litigation fees and costs incurred by Sava in pursuing such proceeds.  Within ten (10) business days of the date Sava receives any proceeds from any such settlement or judgment, Sava shall make such payments in furtherance of this settlement in accordance with Paragraph 1.b.iii.

iii.    All payments made pursuant to the Revenue Contingency or the Insurance Contingency shall collectively be referred to as the "Contingency Payments."  All Contingency Payments made to the United States constitute the "Federal Contingency Payments."  All Contingency Payments made to the Medicaid Coinsurance Participating States and the Medicaid Quality of Care Participating States constitute the "State Contingency Payments."  Sava shall make all Contingency Payments in accordance with Exhibit C ("Federal Contingency Payments and State Contingency Payments") and Exhibit D ("Sava Payments to Relators").

9

c.      The Federal Upfront Payment and the Federal Contingency Payments collectively comprise the "Federal Settlement Amount."  All payments of any portion or all of the Federal Settlement Amount (the "Federal Settlement Payments"), and/or any interest thereon, shall be made by electronic funds transfer pursuant to written instructions to be provided by the Civil Division of the United States Department of Justice.

2.      Conditioned upon the United States' receipt of the Federal Settlement Payments from Sava set forth in Paragraph 1 above, the United States agrees that, as soon as feasible following 91 days after receipt of each such payment, and conditioned upon the non-occurrence of (1) an Avoidance Event as defined in Paragraph 21(d), or (2) a Bankruptcy Event as defined in Paragraph 21(d), it shall make payments to Relators as indicated in Exhibit E, by electronic funds transfer and pursuant to written instructions to be provided by Relators' counsel.  Those payments described shall collectively be referred to as "Relators' Share."

3.      No later than five (5) days after the Effective Date of this Agreement, Sava shall make payments to Relators as identified in Exhibit D ("Relators' Upfront Fees and Costs Payments"), by electronic funds transfer and pursuant to written instructions to be provided by Relators' counsel.  If Sava makes any Contingency Payments, on the same date of any such payments, Sava shall make payments to Relators as identified in Exhibit D ("Relators' Contingency Fees and Costs Payments").  Sava shall have no obligation to make any additional payments to Relators and/or Relators' counsel with respect to the matters covered by this Agreement or the claims which have been or could have been asserted on behalf of the United States, states, or local government in the Civil Actions.

4.      Subject to the exceptions in Paragraph 7 (concerning reserved claims) below, and subject to Paragraph 10 (concerning disclosure of assets), Paragraph 20 (concerning default) below, and Paragraph 21 (concerning bankruptcy) below, and upon the United States' receipt of

the Federal Upfront Payment plus interest due under Paragraph 1, the United States releases

Sava, together with its current and former parent corporations; current and former direct and

indirect subsidiaries; current and former brother or sister corporations; current and former

divisions; current and former corporate owners; and the corporate successors and assigns of any

of them from any civil or administrative monetary claim the United States has for the Covered

Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties

Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or

the common law theories of payment by mistake, unjust enrichment, and fraud.

5.      Upon the United States' receipt of the Federal Upfront Payment plus interest due

under Paragraph 1, Relators, for themselves and for their heirs, successors, attorneys, agents, and

assigns, release Sava, together with its current and former parent corporations and shareholders;

current and former direct and indirect subsidiaries; current and former brother or sister

corporations; current and former divisions; current and former owners; current and former

directors, officers, employees, and affiliates; and the predecessors, successors, transferees, and

assigns of any of them, and their respective officers, agents, servants and employees, from any

claims for relief, actions, rights, causes of action, suits, debts, obligations, liabilities, demands,

losses, damages, costs and expenses of any kind, whether known or unknown as of the Effective

Date of this Agreement that Relators have, may have, or could have asserted on behalf of the

United States or any state or local government or sovereign, including but not limited to any

claim relating in any way to the Covered Conduct, the allegations of the Complaints in the Civil

Actions, the filing of the Civil Actions, the investigation and prosecution of this matter, or the

negotiation of this Agreement, including all liability, claims, demands, actions, or causes of

action asserted on behalf of the United States or any state or local government or sovereign

existing as of the Effective Date of this Agreement, fixed or contingent, in law or in equity, in

11

contract or in tort, or under any federal or state statute, regulation, or common law, including, without limitation, any civil monetary claim the Relators have on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733 or on behalf of any states under state False Claims Acts.

6.     In consideration of the Federal Upfront Payment and the Corporate Integrity Agreement (CIA) entered into between OIG-HHS and SavaSeniorCare, LLC and SavaSeniorCare Administrative and Consulting, LLC, and upon the United States' receipt of full payment of the Federal Upfront Payment, plus interest due under Paragraph 1, the OIG-HHS shall release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from Medicare, Medicaid, and other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) against SavaSeniorCare, LLC and SavaSeniorCare Administrative and Consulting, LLC under 42 U.S.C. § 1320a-7a (Civil Monetary Penalties Law) or 42 U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and other prohibited activities) for the Covered Conduct, except as reserved in this paragraph and in Paragraph 7 (concerning reserved claims), below.  The OIG-HHS expressly reserves all rights to comply with any statutory obligations to exclude Sava from Medicare, Medicaid, and other Federal health care programs under 42 U.S.C. § 1320a-7(a) (mandatory exclusion) based upon the Covered Conduct. Nothing in this paragraph precludes the OIG-HHS from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 7, below.

7.     Notwithstanding the releases given in Paragraph 4 of this Agreement, or any other term of this Agreement, the following claims and rights of the United States are specifically reserved and are not released:

        a.     Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

        b.     Any criminal liability;

      c.      Except as explicitly stated in this Agreement, any administrative liability or enforcement right, including mandatory exclusion from Federal health care programs;

      d.      Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

      e.      Any liability based upon obligations created by this Agreement; and

      f.      Any liability of individuals.

8.      Relators and their heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B).  Conditioned upon Relators' receipt of the Relators' Share, Relators and their heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Actions or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Actions.

9.      Relators, for themselves, and for their heirs, successors, attorneys, agents, and assigns, release Sava, and its officers, agents, and employees, from any liability to Relators arising from the filing of the Civil Actions on behalf of the United States and various states under 31 U.S.C. § 3730(b) and analogous provisions of state law, or under 31 U.S.C. § 3730(d) for expenses or attorneys' fees and costs.  This release does not apply to, and Relators expressly reserve any rights with respect to, their claims for wrongful termination under 31 U.S.C. § 3730(h).

10.      Sava has provided sworn financial disclosures and supporting documents (together "Financial Disclosures") to the United States and the United States has relied on the

accuracy and completeness of those Financial Disclosures in reaching this Agreement.  Sava

warrants that the Financial Disclosures were complete, accurate, and current.  If the United

States learns of asset(s) in which Sava had an interest of any kind (including, but not limited to,

promises by insurers or other third parties to satisfy Sava's obligations under this Agreement)

that were not disclosed in the Financial Disclosures, or if the United States learns of any false

statement or misrepresentation by Sava on, or in connection with, the Financial Disclosures, and

if such nondisclosure, false statement, or misrepresentation changes the estimated net worth set

forth in the Financial Disclosures by Four Million, Eight Hundred Thousand Dollars

($4,800,000.00) or more, the United States may at its option: (a) rescind this Agreement and

reinstate its suit or file suit based on the Covered Conduct or (b) collect the full Federal

Settlement Amount in accordance with the Agreement plus one hundred percent (100%) of the

net value of Sava's previously undisclosed assets.  In the event the United States elects option (a)

and prevails, Relators may claim their reasonable attorneys' fees and costs to the extent

permitted by 31 U.S.C. § 3730(d)(1).  In the event the United States elects option (b), Sava

agrees that if the United States prevails in a collection action undertaken by the United States

pursuant to this provision, it will immediately pay the United States the greater of (i) a ten-

percent (10%) surcharge of the amount collected in the collection action, as allowed by 28

U.S.C. § 3011(a), or (ii) the United States shall be entitled to recover its reasonable attorneys'

fees and expenses incurred in such an action.  In the event that the United States, pursuant to this

paragraph rescinds this Agreement, Sava waives and agrees not to plead, argue, or otherwise

raise any defenses under the theories of statute of limitations, laches, estoppel, or similar

theories, to any civil or administrative claims that (a) are filed by the United States within 120

calendar days of written notification to Sava that this Agreement has been rescinded, and

(b) relate to the Covered Conduct, except to the extent these defenses were available on August

14

26, 2011.  In the event of a rescindment and successful recovery by the United States, Relators

shall be entitled to a portion of the proceeds of such recovery in the same proportion as the

Relators' share in any Contingency Payments, as indicated in Exhibit E.

11.    Sava waives and shall not assert any defenses Sava may have to any criminal

prosecution or administrative action relating to the Covered Conduct that may be based in whole

or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the

Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution,

this Agreement bars a remedy sought in such criminal prosecution or administrative action.

12.    Subject to and in consideration of the release from the United States, Sava fully

and finally releases the United States, its agencies, officers, agents, employees, and servants,

from any claims (including attorneys' fees, costs, and expenses of every kind and however

denominated) that Sava has asserted, could have asserted, or may assert in the future against the

United States, its agencies, officers, agents, employees, and servants, related to the Covered

Conduct or the United States' investigation or prosecution thereof.

13.    Subject to and in consideration of the release from the Relators, Sava, and its

current and former direct or indirect parent entities, subsidiaries, sister or related companies,

direct or indirect affiliates, divisions, officers, directors, agents, representatives, and employees,

fully and finally release the Relators, their heirs, successors, attorneys, agents, and assigns, from

liability for any and all claims, demands, and/or causes of action whatsoever  (including

attorneys' fees, costs, and expenses of every kind and however denominated) that Sava, its

current and former direct or indirect parent entities, subsidiaries, sister or related companies,

direct or indirect affiliates, divisions, officers, directors, agents, representatives, and employees,

have or could have asserted, or may assert in the future against the Relators, including without

15

limitation all claims, demands, and/or causes of action related to the Covered Conduct and/or the

allegations in the Civil Actions and the Relators' investigation and prosecution thereof.

14.    Sava fully and finally releases the Relators' attorneys from any claims (including,

but not limited to, attorneys' fees, costs, and expenses of every kind and however denominated)

that Sava has asserted, could have asserted, or may assert in the future against the Relators'

attorneys, related to the Covered Conduct and the Relators' investigation and prosecution

thereof.

15.    The Federal Settlement Amount shall not be decreased as a result of the denial of

claims for payment now being withheld from payment by any Medicare contractor (e.g.,

Medicare Administrative Contractor, fiscal intermediary, carrier) or any state payer, related to

the Covered Conduct; and Sava agrees not to resubmit to any Medicare contractor or any state

payer any previously denied claims related to the Covered Conduct, agrees not to appeal any

such denials of claims, and agrees to withdraw any such pending appeals.

16.    Sava agrees to the following:

a.    Unallowable Costs Defined:  All costs (as defined in the Federal

Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social

Security Act, 42 U.S.C. §§ 1395-1395lll and 1396-1396w-5; and the regulations and official

program directives promulgated thereunder) incurred by or on behalf of Sava, its present or

former officers, directors, employees, shareholders, and agents in connection with:

(1)    the matters covered by this Agreement;

(2)    the United States' audit(s) and civil investigation(s) of the matters covered

by this Agreement;

(3)    Sava's investigation, defense, and corrective actions undertaken in

response to the United States' audit(s) and civil investigation(s) in

16

connection with the matters covered by this Agreement (including

attorneys' fees);

(4)    the negotiation and performance of this Agreement;

(5)    the payment Sava makes to the United States pursuant to this Agreement

and any payments that Sava may make to Relators, including costs and

attorneys' fees; and

(6)    the negotiation of, and obligations undertaken pursuant to the CIA to:

(i) retain an independent review organization and independent monitor to

perform reviews as described in Section III of the CIA; and (ii) prepare

and submit reports to the OIG-HHS

are unallowable costs for government contracting purposes and under the Medicare Program,

Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program

(FEHBP) (hereinafter referred to as Unallowable Costs).  However, nothing in paragraph 16.a.(6)

that may apply to the obligations undertaken pursuant to the CIA affects the status of costs that

are not allowable based on any other authority applicable to Sava.

b.    Future Treatment of Unallowable Costs:  Unallowable Costs shall be

separately determined and accounted for by Sava, and Sava shall not charge such Unallowable

Costs directly or indirectly to any contracts with the United States or any State Medicaid

program, or seek payment for such Unallowable Costs through any cost report, cost statement,

information statement, or payment request submitted by Sava or any of its subsidiaries or

affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

c.    Treatment of Unallowable Costs Previously Submitted for Payment:  Sava

further agrees that within 90 days of the Effective Date of this Agreement it shall identify to

applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and

17

Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Sava or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs.  Sava agrees that the United States, at a minimum, shall be entitled to recoup from Sava any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies.  The United States reserves its rights to disagree with any calculations submitted by Sava or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this paragraph) on Sava or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

d.    Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Sava's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this paragraph.

17.    Sava agrees to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement.  Upon reasonable notice, Sava shall encourage, and agrees not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of

such individuals.  Sava further agrees to furnish to the United States, upon request, complete and

unredacted copies of all non-privileged documents, reports, memoranda of interviews, and

records in its possession, custody, or control concerning any investigation of the Covered

Conduct that it has undertaken, or that has been performed by another on its behalf.

18.     This Agreement is intended to be for the benefit of the Parties only, including

their current and former parent corporations, subsidiaries, successors, and assigns.  The Parties

do not release any claims against any other person or entity, except to the extent provided for in

Paragraph 19 (waiver for beneficiaries paragraph), below.

19.     Sava agrees that it waives and shall not seek payment for any of the health care

billings covered by this Agreement from any health care beneficiaries or their parents, sponsors,

legally responsible individuals, or third party payors based upon the claims defined as Covered

Conduct.

20.     The Federal Settlement Amount represents the amount the United States is willing

to accept in compromise of its civil claims arising from the Covered Conduct due solely to

Sava's financial condition as reflected in the Financial Disclosures referenced in Paragraph 10.

a.      In the event that Sava fails to pay the Federal Upfront Payment or any Federal

Contingency Payment as set forth in Paragraph 1 above, Sava shall be in Default of Sava's

payment obligations ("Default").  The United States will provide a written Notice of Default, and

Sava shall have an opportunity to cure such Default within seven (7) calendar days from the date

of receipt of the Notice of Default by making the payment due and interest that shall accrue at

the rate of twelve percent (12%) per annum, compounded daily from the date of Default, on the

unpaid total (principal and interest balance).  Notice of Default will be delivered to Sava, or to

such other representative as Sava shall designate in advance in writing.  If Sava fails to cure the

Default within seven (7) calendar days of receiving the Notice of Default and in the absence of

an agreement with the United States to a modified payment schedule ("Uncured Default"),

interest on the remaining unpaid total (principal and interest balance) shall thereafter continue to

accrue at the of twelve percent (12%) per annum, compounded daily from the date of Default.

      b.      In the event of Uncured Default, Sava agrees that the United States, at its sole

discretion, may (i) retain any payments previously made, rescind this Agreement and pursue the

Civil Actions or bring any civil and/or administrative claim, action, or proceeding against Sava

for the claims that would otherwise be covered by the releases provided in Paragraphs 4 and 6

above, with any recovery reduced by the amount of any payments previously made by Sava to

the United States under this Agreement; (ii) take any action to enforce this Agreement in a new

action or by reinstating the Civil Actions; (iii) offset the remaining unpaid balance from any

amounts due and owing to Sava and/or affiliated companies by any department, agency, or agent

of the United States at the time of Default or subsequently; and/or (iv) exercise any other right

granted by law, or under the terms of this Agreement, or recognizable at common law or in

equity.  The United States shall be entitled to any other rights granted by law or in equity by

reason of Default, including referral of this matter for private collection.  In the event the United

States pursues a collection action, Sava agrees immediately to pay the United States the greater

of (i) a ten-percent (10%) surcharge of the amount collected, as allowed by 28 U.S.C. § 3011(a),

or (ii) the United States' reasonable attorneys' fees and expenses incurred in such an action.  In

the event that the United States opts to rescind this Agreement pursuant to this paragraph, Sava

waives and agrees not to plead, argue, or otherwise raise any defenses of statute of limitations,

laches, estoppel or similar theories, to any civil or administrative claims that are (i) filed by the

United States against Sava within 120 days of written notification that this Agreement has been

rescinded, and (ii) relate to the Covered Conduct, except to the extent these defenses were

available on August 26, 2011.  Sava agrees not to contest any offset, recoupment, and/or

collection action undertaken by the United States pursuant to this paragraph, either administratively or in any state or federal court, except on the grounds of actual payment to the United States or the existence of an Uncured Default.

      c.      In the event of Uncured Default, OIG-HHS may exclude Sava from participating in all Federal health care programs until Sava pays the Federal Settlement Amount, with interest, as set forth above (Exclusion for Default).  OIG-HHS will provide written notice of any such exclusion to Sava.  Sava waives any further notice of the exclusion under 42 U.S.C. § 1320a-7(b)(7), and agrees not to contest such exclusion either administratively or in any state or federal court.  Reinstatement to program participation is not automatic.  If at the end of the period of exclusion, Sava wishes to apply for reinstatement, it must submit a written request for reinstatement to OIG-HHS in accordance with the provisions of 42 C.F.R. §§ 1001.3001-.3005. Sava will not be reinstated unless and until OIG-HHS approves such request for reinstatement. The option for Exclusion for Default is in addition to, and not in lieu of, the options identified in this Agreement or otherwise available.

      21.      In exchange for valuable consideration provided in this Agreement, Sava acknowledges the following:

      a.      In evaluating whether to execute this Agreement, the Parties intend that the mutual promises, covenants, and obligations set forth herein constitute a contemporaneous exchange for new value given to Sava, within the meaning of 11 U.S.C. § 547(c)(1), and the Parties conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.

      b.      The mutual promises, covenants, and obligations set forth herein are intended by the Parties to, and do in fact, constitute a reasonably equivalent exchange of value.

c.      The Parties do not intend to hinder, delay, or defraud any entity to which Sava

was or became indebted to on or after the date of any transfer contemplated in this Agreement,

within the meaning of 11 U.S.C. § 548(a)(1).

d.      If Sava's obligations under this Agreement are avoided for any reason (including

but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy

Code) (an "Avoidance Event") or if, before the Federal Settlement Amount is paid in full, Sava

or a third party commences a case, proceeding, or other action under any law relating to

bankruptcy, insolvency, reorganization, or relief of debtors seeking any order for relief of Sava's

debts, or to adjudicate Sava as bankrupt or insolvent; or seeking appointment of a receiver,

trustee, custodian, or other similar official for Sava or for all or any substantial part of Sava's

assets (collectively, a "Bankruptcy Event"):

(i) the United States may rescind the releases in this Agreement and bring any

civil and/or administrative claim, action, or proceeding against Sava for the claims that would

otherwise be covered by the releases provided in Paragraph 4 and 6 above; and

(ii) the United States has an undisputed, noncontingent, and liquidated allowed

claim against Sava in the amount of Seventy-Four Million Dollars ($74,000,000.00), less any

payments received pursuant to this Agreement, provided, however, that such payments are not

otherwise avoided and recovered from the United States by Sava, a receiver, trustee, custodian,

or other similar official for Sava.

e.      Sava agrees that any civil and/or administrative claim, action, or proceeding

brought by the United States under Paragraph 21.d is not subject to an "automatic stay" pursuant

to 11 U.S.C. § 362(a) because it would be an exercise of the United States' police and regulatory

power.  Sava shall not argue or otherwise contend that the United States' claim, action, or

proceeding is subject to an automatic stay and, to the extent necessary, consents to relief from the

automatic stay for cause under 11 U.S.C. § 362(d)(1). Sava waives and shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claim, action, or proceeding brought by the United States within 120 days of written notification to Sava that the releases have been rescinded pursuant to this paragraph, except to the extent such defenses were available on August 26, 2011.

22.    Upon receipt of the Federal Upfront Payment described in Paragraph 1, above, the United States, Sava, and the Tennessee Relators shall promptly sign and file in the Tennessee Actions a Joint Stipulation of Dismissal pursuant to Rule 41(a)(1), and the United States shall promptly intervene in the Pennsylvania Action and the United States and the Pennsylvania Relators shall promptly sign and file in the Pennsylvania Action a Joint Stipulation of Dismissal pursuant to Rule 41(a)(1) as follows:

a.    the Stipulations of Dismissal shall be with prejudice to the United States' claims against Sava as to the Covered Conduct;

b.    the Stipulations of Dismissal shall be without prejudice to the United States as to all other claims against Sava;

c.    the Stipulations of Dismissal shall be with prejudice as to all claims made by the Tennessee Relators and the Pennsylvania Relators as to all claims against Sava with the exception of retaliation claims asserted pursuant to 31 U.S.C. § 3730(h); and

d.    the Stipulations of Dismissal shall be with prejudice as to the Pennsylvania Relators as to all claims.

23.    Except as provided in Paragraph 3, above, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

24.     Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

25.     This Agreement is governed by the laws of the United States.  The exclusive venue for any dispute relating to this Agreement is the United States District Court for the Middle District of Tennessee.  For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

26.     This Agreement constitutes the complete agreement between the Parties.  This Agreement may not be amended except by written consent of the Parties.  Forbearance by the United States from pursuing any remedy or relief available to it under this Agreement shall not constitute a waiver of rights under this Agreement.

27.     The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

28.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

29.     This Agreement is binding on Sava's successors, transferees, heirs, and assigns.

30.     This Agreement is binding on Relators' successors, transferees, heirs, and assigns.

31.     All Parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

32.     This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement).  Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

<u>**THE UNITED STATES OF AMERICA**</u>

DATED: _____    BY:    ALISON ROUSSEAU
                                  Digitally signed by
                                  ALISON ROUSSEAU
                                  Date: 2021.05.21
                                  09:04:30 -04'00'

                           ALISON B. ROUSSEAU
                           Senior Counsel for Health Care Fraud
                           Commercial Litigation Branch
                           Civil Division
                           United States Department of Justice

DATED: _____    BY:    _____
                           SUSAN C. LYNCH
                           Senior Counsel for Elder Justice
                           Commercial Litigation Branch
                           Civil Division
                           United States Department of Justice

DATED: _____    BY:    MARK WILDASIN
                                    Digitally signed by
                                    MARK WILDASIN
                                    Date: 2021.05.21
                                    07:38:33 -05'00'

                           MARK H. WILDASIN
                           Civil Chief
                           Assistant United States Attorney
                           Middle District of Tennessee

DATED: _____    BY:    _____
                           JENNIFER ARBITTIER WILLIAMS
                           Acting United States Attorney
                           Eastern District of Pennsylvania

DATED: _____    BY:    _____
                           GREGORY B. DAVID
                           Chief, Civil Division
                           Assistant United States Attorney
                           Eastern District of Pennsylvania

## THE UNITED STATES OF AMERICA

DATED: _____        BY: _____
                               ALISON B. ROUSSEAU
                               Senior Counsel for Health Care Fraud
                               Commercial Litigation Branch
                               Civil Division
                               United States Department of Justice


DATED: 5/20/2021          BY: _____
                               SUSAN C. LYNCH
                               Senior Counsel for Elder Justice
                               Commercial Litigation Branch
                               Civil Division
                               United States Department of Justice


DATED: _____        BY: _____
                               MARK H. WILDASIN
                               Civil Chief
                               Assistant United States Attorney
                               Middle District of Tennessee


DATED: _____        BY: _____
                               JENNIFER ARBITTIER WILLIAMS
                               Acting United States Attorney
                               Eastern District of Pennsylvania


DATED: _____        BY: _____
                               GREGORY B. DAVID
                               Chief, Civil Division
                               Assistant United States Attorney
                               Eastern District of Pennsylvania

## THE UNITED STATES OF AMERICA

DATED: _____    BY: _____

ALISON B. ROUSSEAU
Senior Counsel for Health Care Fraud
Commercial Litigation Branch
Civil Division
United States Department of Justice


DATED: _____    BY: _____

SUSAN C. LYNCH
Senior Counsel for Elder Justice
Commercial Litigation Branch
Civil Division
United States Department of Justice


DATED: _____    BY: _____

MARK H. WILDASIN
Civil Chief
Assistant United States Attorney
Middle District of Tennessee


DATED: _____    BY: LOUIS LAPPEN    Digitally signed by LOUIS LAPPEN
Date: 2021.05.13 10:56:33 -04'00'

JENNIFER ARBITTIER WILLIAMS
Acting United States Attorney
Eastern District of Pennsylvania


DATED: _____    BY: GREGORY DAVID    Digitally signed by GREGORY DAVID
Date: 2021.05.13 10:42:51 -04'00'

GREGORY B. DAVID
Chief, Civil Division
Assistant United States Attorney
Eastern District of Pennsylvania

DATED: _____    BY:    CHARLENE
                            FULLMER        Digitally signed by CHARLENE FULLMER
                                           Date: 2021.05.13 10:59:41 -04'00'
                            _____
                            CHARLENE KELLER FULLMER
                            Deputy Chief, Civil Division
                            Assistant United States Attorney
                            Eastern District of Pennsylvania

DATED: _____    BY:    DAVID DEGNAN    Digitally signed by DAVID
                                            DEGNAN
                                            Date: 2021.05.13 10:25:52 -04'00'
                            _____
                            DAVID A. DEGNAN
                            GERALD B. SULLIVAN
                            Assistant United States Attorneys
                            Eastern District of Pennsylvania

DATED: _____    BY:    _____
                            LISA M. RE
                            Assistant Inspector General for Legal Affairs
                            Office of Counsel to the Inspector General
                            Office of Inspector General
                            United States Department of Health and Human Services

DATED: _____        BY: _____
                             CHARLENE KELLER FULLMER
                             Deputy Chief, Civil Division
                             Assistant United States Attorney
                             Eastern District of Pennsylvania


DATED: _____        BY: _____
                             DAVID A. DEGNAN
                             GERALD B. SULLIVAN
                             Assistant United States Attorneys
                             Eastern District of Pennsylvania

                             GREGORY          Digitally signed by
                                              GREGORY DEMSKE
                             DEMSKE           Date: 2021.05.13
DATED: _____        BY:                  10:40:16 -04'00'
                             LISA M. RE
                             Assistant Inspector General for Legal Affairs
                             Office of Counsel to the Inspector General
                             Office of Inspector General
                             United States Department of Health and Human Services

**SAVASENIORCARE, LLC, SAVASENIORCARE ADMINISTRATIVE AND
CONSULTING, LLC, AND SSC EQUITY HOLDINGS, LLC - DEFENDANTS**

DATED:  May 12, 2021    BY:  _____

JERRY ROLES
Chief Executive Officer
SavaSeniorCare, LLC, SavaSeniorCare Administrative and
Consulting, LLC, and SSC Equity Holdings, LLC

DATED: _____    BY:  _____

GLENN P. HENDRIX
Arnall Golden Gregory LLP
Counsel for SavaSeniorCare, LLC, SavaSeniorCare
Administrative and Consulting, LLC, and SSC Equity
Holdings, LLC

DATED: 5-13-21    BY:  _____

JAY S. BOWEN
Shackelford Bowen McKinley & Norton, LLP
Counsel for SavaSeniorCare, LLC, SavaSeniorCare
Administrative and Consulting, LLC, and SSC Equity
Holdings, LLC

27

**SAVASENIORCARE, LLC, SAVASENIORCARE ADMINISTRATIVE AND
CONSULTING, LLC, AND SSC EQUITY HOLDINGS, LLC - DEFENDANTS**


DATED: _____        BY: _____
                             JERRY ROLES
                             Chief Executive Officer
                             SavaSeniorCare, LLC, SavaSeniorCare Administrative and
                             Consulting, LLC, and SSC Equity Holdings, LLC




DATED: _5/12/2021_       BY: _____
                             GLENN P. HENDRIX
                             Arnall Golden Gregory LLP
                             Counsel for SavaSeniorCare, LLC, SavaSeniorCare
                             Administrative and Consulting, LLC, and SSC Equity
                             Holdings, LLC




DATED: _____        BY: _____
                             JAY S. BOWEN
                             Shackelford Bowen McKinley & Norton, LLP
                             Counsel for SavaSeniorCare, LLC, SavaSeniorCare
                             Administrative and Consulting, LLC, and SSC Equity
                             Holdings, LLC


27

DATED: 5/13/21          BY:    _Rita Hayward_
                               RITA HAYWARD


DATED: 5/13/21          BY:    _W. Michael Hamilton_
                               W. MICHAEL HAMILTON
                               Provost Umphrey Law Firm, LLP
                               Counsel for Relator Rita Hayward


DATED: 5/13/21          BY:    _____
                               PATRICK BARRETT
                               Barrett Law Office, PLLC
                               Counsel for Relator Rita Hayward


DATED: 5/13/21          BY:    _Ross Begelman_
                               ROSS BEGELMAN
                               Begelman & Orlow, P.C.
                               Counsel for Relator Rita Hayward


28

## TRAMMEL KUKOYI - RELATOR

DATED: 5|13|2021   BY: _____
                        TRAMMEL KUKOYI

DATED: 5/13/2021   BY: _____
                        JOEL M. ANDROPHY
                        JANIS G. GORTON
                        Berg & Androphy
                        Counsel for Relator Trammel Kukoyi

29

## TERRENCE SCOTT - RELATOR

DATED: _05/17/2021_    BY: _____
TERRENCE SCOTT

DATED: 05/12/2021    BY: _____
CHARLES SIEGEL
CAITLYN SILHAN
Waters & Kraus, LLP
Counsel for Relator Terrence Scott

## JAMES THORNTON - RELATOR

DATED: 5/19/2021        BY: _____
                             JAMES THORNTON


DATED: _____        BY: _____
                             DAVID T. MARKS
                             Marks Balette Giessel & Young, P.L.L.C.
                             Counsel for Relator James Thornton


DATED: _____        BY: _____
                             THOMAS W. SHERIDAN
                             Sheridan & Murray, LLC
                             Counsel for Relator James Thornton


DATED: _____        BY: _____
                             JOSEPH TRAUTWEIN
                             Joseph Trautwein & Associates, LLC
                             Counsel for Relator James Thornton

31

## JAMES THORNTON - RELATOR

DATED: _____    BY: _____

                                      JAMES THORNTON

DATED: 5/19/21    BY: _____

                                      DAVID T. MARKS
                                      Marks Balette Giessel & Young, P.L.L.C.
                                      Counsel for Relator James Thornton

DATED: _____    BY: _____

                                      THOMAS W. SHERIDAN
                                      Sheridan & Murray, LLC
                                      Counsel for Relator James Thornton

DATED: _____    BY: _____

                                      JOSEPH TRAUTWEIN
                                      Joseph Trautwein & Associates, LLC
                                      Counsel for Relator James Thornton

## <u>JAMES THORNTON - RELATOR</u>

DATED: _____    BY: _____
                         **JAMES THORNTON**


DATED: _____    BY: _____
                         **DAVID T. MARKS**
                         Marks Balette Giessel & Young, P.L.L.C.
                         Counsel for Relator James Thornton

DATED: 5/19/21    BY: _____
                         **THOMAS W. SHERIDAN**
                         Sheridan & Murray, LLC
                         Counsel for Relator James Thornton

DATED: 5/19/21    BY: _____
                         **JOSEPH TRAUTWEIN**
                         Joseph Trautwein & Associates, LLC
                         Counsel for Relator James Thornton

31

## BARBARA ROBERTS - RELATOR

DATED: 5-19-21    BY: _____
BARBARA ROBERTS

DATED: _____    BY: _____
DAVID T. MARKS
Marks Balette Giessel & Young, P.L.L.C.
Counsel for Relator Barbara Roberts

DATED: _____    BY: _____
THOMAS W. SHERIDAN
Sheridan & Murray, LLC
Counsel for Relator Barbara Roberts

DATED: _____    BY: _____
JOSEPH TRAUTWEIN
Joseph Trautwein & Associates, LLC
Counsel for Relator Barbara Roberts

## BARBARA ROBERTS - RELATOR

DATED: _____        BY: _____

BARBARA ROBERTS

DATED: 5/19/21        BY: _____

DAVID T. MARKS
Marks Balette Giessel & Young, P.L.L.C.
Counsel for Relator Barbara Roberts

DATED: _____        BY: _____

THOMAS W. SHERIDAN
Sheridan & Murray, LLC
Counsel for Relator Barbara Roberts

DATED: _____        BY: _____

JOSEPH TRAUTWEIN
Joseph Trautwein & Associates, LLC
Counsel for Relator Barbara Roberts

## BARBARA ROBERTS - RELATOR

DATED: _____    BY: _____
                         BARBARA ROBERTS


DATED: _____    BY: _____
                         DAVID T. MARKS
                         Marks Balette Giessel & Young, P.L.L.C.
                         Counsel for Relator Barbara Roberts

DATED: 5/14/21    BY: _____
                         THOMAS W. SHERIDAN
                         Sheridan & Murray, LLC
                         Counsel for Relator Barbara Roberts

DATED: 5/14/21    BY: _____
                         JOSEPH TRAUTWEIN
                         Joseph Trautwein & Associates, LLC
                         Counsel for Relator Barbara Roberts

32

Exhibit A

Sava Retained Facilities

| FACILITY NAME | SUBSIDIARY CORPORATION/LICENSEE | STREET ADDRESS | CITY | STATE | ZIP | MEDICARE |
|---|---|---|---|---|---|---|
| Bride Brook Health and Rehabilitation Center | SSC Niantic Operating Company LLC | 23 Liberty Way | Niantic | CT | 06357 | 07-5375 |
| Pendleton Health and Rehabilitation Center | SSC Mystic Operating Company LLC | 44 Maritime Drive | Mystic | CT | 06355 | 07-5341 |
| Anderson Mill Health and Rehabilitation Center | SSC Austell Operating Company LLC | 2130 Anderson Mill Road | Austell | GA | 30001 | 11-5145 |
| Augusta Villas (PCH H) | SSC Lee Street Operating Company LLC | 2237 Lee Street | Augusta | GA | 30904 | NA |
| Augusta Villas II (PCH H) | Johns Road Operating Company LLC | 2237 Lee Street | Augusta | GA | 30904 | NA |
| Azalea Health and Rehabilitation Center | Anthony Road Operating Company LLC | 1600 Anthony Road | Augusta | GA | 30907 | 11-5044 |
| Bentley Square (PCH) | Lavista Operating Company LLC | 3884 Lavista Road | Tucker | GA | 30084 | NA |
| Brian Center Health & Rehabilitation/Canton | SSC Canton Operating Company LLC | 150 Hospital Circle, N.W. | Canton | GA | 30114 | 11-5508 |
| Briarwood Health and Rehabilitation Center | Briarwood Operating Company LLC | 3888 Lavista Road | Tucker | GA | 30084 | 11-5322 |
| Dunwoody Health and Rehabilitation Center | Dunwoody Operating Company LLC | 5470 Meridian Mark Road, Bldge E | Atlanta | GA | 30342 | 11-5270 |
| Glenwood Health and Rehabilitation Center | Glenwood Operating Company LLC | 4115 Glenwood Road | Decatur | GA | 30032 | 11-5025 |
| North Decatur Health and Rehabilitation Center | North Decatur Operating Company LLC | 2787 North Decatur Road | Decatur | GA | 30033 | 11-5012 |
| Northeast Atlanta Health and Rehabilitation Center | SSC Atlanta Operating Company LLC | 1500 South Johnson Ferry Road | Atlanta | GA | 30319 | 11-5504 |
| Rome Health and Rehabilitation Center | Rome Operating Company LLC | 1345 Redmond Road | Rome | GA | 30165 | 11-5363 |
| Rose City Health and Rehabilitation Center | Thomasville Operating Company LLC | 930 South Broad Street | Thomasville | GA | 31792 | 11-5501 |
| Roselane Health and Rehabilitation Center | Marietta Operating Company LLC | 613 Roselane Street | Marietta | GA | 30064 | 11-5660 |
| Tifton Health and Rehabilitation Center | Tifton Operating Company LLC | 1451 Newton Drive | Tifton | GA | 31794 | 11-5412 |
| Windermere Health and Rehabilitation Center | Windermere Operating Company LLC | 3618 J Dewey Gray Circle | Augusta | GA | 30909 | 11-5291 |
| Arcola Health and Rehabilitation Center | SSC Silver Spring Operating Company LLC | 901 Arcola Avenue | Silver Spring | MD | 20902 | 21-5014 |
| Bel Air Health and Rehabilitation Center | SSC Bel Air Operating Company LLC | 410 East MacPhail Road | Bel Air | MD | 21014 | 21-5312 |
| Bethesda Health and Rehabilitation Center | SSC Bethesda Operating Company LLC | 5721 Grosvenor Lane | Bethesda | MD | 20814 | 21-5187 |
| Forest Hill Health and Rehabilitation Center | SSC Forest Hill Operating Company LLC | 109 Forest Valley Drive | Forest Hill | MD | 21050 | 21-5194 |
| Frederick Health and Rehabilitation Center | SSC North Place Operating Company LLC | 30 North Place | Frederick | MD | 21701 | 21-5184 |
| Glen Burnie Health and Rehabilitation Center | SSC Glen Burnie Operating Company LLC | 7355 Furnace Branch Road East | Glen Burnie | MD | 21060 | 21-5266 |
| Heritage Harbour Health and Rehabilitation Center | SSC Annapolis Operating Company LLC | 2700 South Haven Road | Annapolis | MD | 21401 | 21-5325 |
| North Arundel Health and Rehabilitation Center | SSC Glen Burnie North Arundel Operating Company LLC | 131 Hospital Drive | Glen Burnie | MD | 21061 | 21-5316 |
| Overlea Health and Rehabilitation Center | SSC Baltimore Operating Company LLC | 6116 Belair Road | Baltimore | MD | 21206 | 21-5209 |
| Patuxent River Health and Rehabilitation Center | SSC Laurel Operating Company LLC | 14200 Laurel Park Drive | Laurel | MD | 20707 | 21-5141 |
| Summit Park Health and Rehabilitation Center | SSC Catonsville Operating Company LLC | 1502 Frederick Rd. | Catonsville | MD | 21228 | 21-5326 |
| BC Health & Rehabilitation/Goldsboro | BC Goldsboro Operating Company LLC | 1700 Wayne Memorial | Goldsboro | NC | 27530 | 34-5343 |
| BC Health & Rehabilitation/Hendersonville | SSC Hendersonville Operating Company LLC | 1870 Pisgah Road | Hendersonville | NC | 28739 | 34-5312 |
| BC Health & Rehabilitation/Hickory East | SSC Hickory East Operating Company LLC | 3031 Tate Boulevard, S.E. | Hickory | NC | 28602 | 34-5232 |
| BC Health & Rehabilitation/Spruce Pine | SSC Spruce Pine Operating Company LLC | 218 Laurel Creek Court | Spruce Pine | NC | 28777 | 34-5270 |
| BC Health & Rehabilitation/Wallace | SSC Wallace Operating Company LLC | 647 SE Railroad Street | Wallace | NC | 28466 | 34-5323 |
| BC Health & Rehabilitation/Weaverville | SSC Weaverville Operating Company LLC | 78 Weaver Boulevard | Weaverville | NC | 28787 | 34-5221 |
| BC Health & Rehabilitation/Wilson | SSC Wilson Operating Company LLC | 2501 Downing Street | Wilson | NC | 27893 | 34-5332 |
| BC Health & Rehabilitation/Windsor | SSC Windsor Brian Operating Company LLC | 1306 South King Street | Windsor | NC | 27983 | 34-5339 |
| BC Health & Rehabilitation/Yanceyville | SSC Yanceyville Operating Company LLC | 1086 Main Street, North | Yanceyville | NC | 27379 | 34-5265 |
| BC Health & Retirement/Cabarrus | SSC Concord Operating Company LLC | 250 Bishop Lane | Concord | NC | 28025 | 34-5562 |
| BC Health & Retirement/Clayton | SSC Clayton Operating Company LLC | 204 Dairy Road | Clayton | NC | 27520 | 34-5317 |
| BC Health & Retirement/Lincolnton | SSC Lincolnton Operating Company LLC | 515 South Generals Boulevard | Lincolnton | NC | 28092 | 34-5250 |
| BC Health and Rehabilitation Hickory Viewmont | SSC Hickory 13th Operating Company LLC | 230 13th Avenue Place, N.W. | Hickory | NC | 28601 | 34-5080 |
| BC Health and Rehabilitation/Eden | SSC Eden Operating Company LLC | 226 North Oakland Avenue | Eden | NC | 27288 | 34-5241 |
| BC Health and Rehabilitation/Gastonia | SSC Gastonia Operating Company LLC | 969 Cox Road | Gastonia | NC | 28054 | 34-5169 |
| BC Health and Rehabilitation/Hertford | SSC Hertford Operating Company LLC | 1300 Dunn Road | Hertford | NC | 27944 | 34-5362 |
| BC Southpoint | SSC Durham Operating Company LLC | 6000 Fayetteville Road | Durham | NC | 27713 | 34-5408 |
| Blue Ridge Health and Rehabilitation Center | Hebron Operating Company LLC | 1510 Hebron Street | Hendersonville | NC | 28739 | 34-5233 |
| Edgecombe Health and Rehabilitation Center | Tarboro Operating Company LLC | 1000 Western Boulevard | Tarboro | NC | 27886 | 34-5195 |
| Haywood Nursing and Rehabilitation Center (name chg | SSC Waynesville Operating Company LLC | 516 Wall Street | Waynesville | NC | 28786 | 34-5411 |
| Kenansville Health and Rehabilitation Center | SSC Kenansville Operating Company LLC | 209 Beasley Street | Kenansville | NC | 28349 | 34-5150 |
| Lumberton Health and Rehabilitation Center | Lumberton Operating Company LLC | 1555 Willis Avenue | Lumberton | NC | 28358 | 34-5234 |
| MacGregor Downs Health and Rehabilitation Center | Greenville Operating Company LLC | 2910 MacGregor Downs Road | Greenville | NC | 27834 | 34-5168 |
| Maple Leaf Health Care | SSC Statesville Maple Leaf Operating Company LLC | 1101 Maple Care Lane | Statesville | NC | 28625 | 34-5340A |
| Surry Community Health and Rehabilitation Center | Mt. Airy Operating Company LLC | 542 Alfred Mill Road | Mt. Airy | NC | 27030 | 34-5191 |
| Pleasant Valley Nursing Center | Pleasant Valley Operating Company LLC | 8 Peabody Road | Derry | NH | 03038 | 30-5039 |
| Lake Mead Health and Rehabilitation Center | Henderson Operating Company LLC | 1180 E. Lake Mead | Hendersonville | NV | 89015 | 29-5037 |

Exhibit A

Sava Retained Facilities

| Facility | Operating Company | Address | City | State | Zip | Phone |
|---|---|---|---|---|---|---|
| Broomall Rehabilitation and Nursing Center | Broomall Operating Company LP | 50 North Malin Road | Broomall | PA | 19008 | 39-5078 |
| North Hills Health and Rehabilitation Center | SSC Wexford Operating Company LP | 194 Swinderman Rd. | Wexford | PA | 15090 | 39-5903 |
| West Hills Health and Rehabilitation Center | SSC Coraopolis Operating Company LP | 951 Brodhead Road | Coraopolis | PA | 15108 | 39-5620 |
| Seneca Health and Rehabilitation Center | SSC Seneca Operating Company LLC | 1407 Old Corey Road | Seneca | SC | 29678 | 42-5139 |
| Sumter East Health and Rehabilitation Center | SSC Sumter East Operating Company LLC | 880 Carolina Avenue (P.O. Box | Sumter | SC | 29151 | 42-5107 |
| Newport Health and Rehabilitation Center | SSC Newport Operating Company LLC | 135 Generation Drive | Newport | TN | 37821 | 44-5504 |
| Norris Health and Rehabilitation Center | SSC Andersonville Operating Company LLC | 3382 Andersonville Highway | Andersonville | TN | 37705 | 044-5303 |
| Alpine Terrace | Uvalde County Hospital Authority (02/28/15) | 746 Alpine Drive | Kerrville | TX | 78028 | 67-5506 |
| Alpine Terrace Retirement & Convalescent Center PC Unit | SSC Kerrville Alpine Terrace Operating Company LLC | 746 Alpine Drive | Kerrville | TX | 78028 | 67-5506 |
| Arlington Heights Health and Rehabilitation Center (eff CHOW 12/27/16) | SSC Fort Worth Nursing & Rehabilitation Center Operating | 4825 Wellesley Street | Ft. Worth | TX | 76017 | 45-5819 |
| Bastrop Nursing Center | SSC Bangs Operating Company LLC | 1105 Fitzgerald | Bangs | TX | 76823 | 67-5377 |
| Bay Villa Healthcare Center | OakBend Medical Center eff 3/31/17 | 400 Old Austin Highway | Bastrop | TX | 78602 | 67-5356 |
| Brazosview Healthcare Center | OakBend Medical Center eff 3/31/17 | 1800 13th Street | Bay City | TX | 77414 | 45-5582 |
| Deer Creek of Wimberley | OakBend Medical Center | 2127 Preston | Richmond | TX | 77469 | 67-5420 |
| Downtown Health and Rehabilitation Center | Uvalde County Hospital Authority (02/28/15) | Route 2, Box 6 | Wimberley | TX | 78676 | 45-5917 |
| Faith Memorial Nursing Home | Fannin County Hospital Authority (03/31/17) | 424 South Adams | Fort Worth | TX | 76104 | 45-5651 |
| Golden Years Nursing and Rehabilitation Center | SSC Pasadena Operating Company LLC | 811 Garner Road | Pasadena | TX | 77502 | 67-5321 |
| Greenview Manor | Seminole Hospital District | 318 Chambers | Marlin | TX | 76661 | 67-5406 |
| Hilltop Village Nursing and Rehabilitation Center | Seminole Hospital District | 401 Owen Lane | Waco | TX | 76710 | 45-5638 |
| Interlochen Health and Rehabilitation Center | Uvalde County Hospital Authority (02/28/15) | 1400 Hilltop Road | Kerrville | TX | 78028 | 45-5628 |
| Kountze Nursing Center | Fannin County Hospital Authority (03/31/17) | 2645 W. Randol Mill Road | Arlington | TX | 76012 | 45-5835 |
| La Paloma Nursing Center | OakBend Medical Center eff 3/31/17 | P.O. Box 940 (FM 1293) | Kountze | TX | 77625 | 45-5594 |
| Lakeshore Village Healthcare Center | Uvalde County Hospital Authority (02/28/15) | FM Road 1329 & Sur Avenue | San Diego | TX | 78384 | 67-5170 |
| Las Palmas Healthcare Center | Seminole Hospital District | 2320 Lakeshore Drive | Waco | TX | 76708 | 45-5438 |
| Levelland Nursing & Rehabilitation Center | SSC McAllen Las Palmas Operating Company LLC | 1301 East Quebec | McAllen | TX | 78503 | 67-5415 |
| Longmeadow Healthcare Center | Seminole Hospital District | 210 West Avenue | Levelland | TX | 79336 | 67-5329 |
| Matador Health and Rehabilitation Center | Fannin County Hospital Authority (03/31/17) | 120 Meadowview Drive | Justin | TX | 76247 | 67-5185 |
| Memorial City Health and Rehabilitation Ctr | Childress County Hospital District (4/1/18) | 805 Harrison Avenue/P.O. Box 70 | Matador | TX | 79244 | 67-6389 |
| Memorial Medical Nursing Center | OakBend Medical Center (4/1/18) | 1341 Blalock | Houston | TX | 77055 | 67-6258 |
| Mt. Pleasant Assisted Living (ALF) | Uvalde County Hospital Authority (03/31/17) | 307 W. Cypress | San Antonio | TX | 78212 | 45-5597 |
| North Park Health and Rehabilitation Center | Mount Pleasant ALF Operating Company LLC | 2009, 2011, 2013 N. Edwards | Mt. Pleasant | TX | 75455 | N/A |
| Northwest Health and Rehabilitation Center | Fannin County Hospital Authority (03/31/17) | 1720 N. McDonald | Mckinney | TX | 75071 | 67-5196 |
| Orchard Park Post Acute Nursing and Rehabilitation f/k/a Retama | SSC Houston Northwest Operating Company LLC | 17600 Cali Drive | Houston | TX | 77090 | 45-5714 |
| Pampa Nursing Center | SSC Weslaco Operating Company LLC | 721 Airport Dr. | Weslaco | TX | 78596 | 67-5363 |
| Park Highlands Nursing & Rehabilitation Center | Seminole Hospital District | 1321 W. Kentucky (P.O. Box 582) | Pampa | TX | 79065 | 67-5327 |
| Pasadena Care Center (managed by Sava) | Fannin County Hospital Authority (03/31/17) | 711 Lucas Street | Athens | TX | 75751 | 67-5460 |
| Peach Tree Place | Raber Corporation | 4006 Vista Road | Pasadena | TX | 77504 | 67-5365 |
| Pine Arbor | Seminole Hospital District | 315 Anderson Street | Weatherford | TX | 76086 | 67-6148 |
| Pleasant Springs Healthcare Center | OakBend Medical Center - eff 3/31/17 | 705 Highway 41/8 West | Silsbee | TX | 77656 | 67-5591 |
| Retama Manor Health and Rehabilitation Center/Rio Grande City | Fannin County Hospital Authority (06/01/15) | 2003 North Edwards | Mt. Pleasant | TX | 75455 | 45-5532 |
| Retama Manor Nursing Center (eff CHOW 9/1/2019) | SSC Rio Grande City Operating Company LLC | 400 S. Pete Diaz Jr. Ave. | Rio Grande City | TX | 78582 | 67-5421 |
| Retama Manor Nursing Center/Alice | SSC Nueces Retama LLC (9/1/19) | 2322 Morgan Avenue | Corpus Christi | TX | 78405 | 45-5575 |
| Retama Manor Nursing Center/Edinburg | Uvalde County Hospital Authority (02/28/15) | 606 Coyote Trail | Alice | TX | 78332 | 67-5309 |
| Retama Manor Nursing Center/Harlingen | SSC Edinburg Operating Company LLC | 1505 Closner | Edinburg | TX | 78539 | 67-5414 |
| Retama Manor Nursing Center/Jourdanton | Starr County Hospital District (4/1/18) | 820 Camelot Drive | Harlingen | TX | 78550 | 45-5822 |
| Retama Manor Nursing Center/Laredo – West | Dimmit Regional Hospital District (06/01/15) | 1504 -Hwy 97 E f/k/a 1504 Oak | Jourdanton | TX | 78026 | 45-5549 |
| Retama Manor Nursing Center/McAllen | Uvalde County Hospital Authority (02/28/15) | 1200 Lane | Laredo | TX | 78040 | 45-5528 |
| Retama Manor Nursing Center/Pleasanton North | Starr County Hospital District (4/1/18) | 900 South 12th Street | McAllen | TX | 78501 | 45-5662 |
| Retama Manor Nursing Center/Pleasanton South | Dimmit Regional Hospital District | 404 Goodwin St. | Pleasanton | TX | 78064 | 67-5502 |
| Retama Manor Nursing Center/Pleasanton South Alzheimer's | Dimmit Regional Hospital District | 905 W. Oaklawn Ave. | Pleasanton | TX | 78064 | 67-5428 |
| Retama Manor Nursing Center/Raymondville | SSC Pleasanton South Operating Company LLC | 905 W. Oaklawn Ave. | Pleasanton | TX | 78064 | 67-5428 |
| Retama Manor Nursing Center/San Antonio – North | Starr County Hospital District (4/1/18) | 1700 S. Expressway 77 | Raymondville | TX | 78580 | 45-5475 |
| Retama Manor Nursing Center/San Antonio West | Uvalde County Hospital Authority (02/28/15) | 501 Ogden | San Antonio | TX | 78212 | 45-5817 |
| Retama Manor Laredo – North | SSC San Antonio West Operating Company LLC | 636 Cupples Rd. | San Antonio | TX | 78237 | 67-5002 |
| Retama Manor Laredo – South | Uvalde County Hospital Authority (02/28/15) | 1100 Galveston | Laredo | TX | 78040 | 67-5396 |
| Silver Creek Manor | Uvalde County Hospital Authority (03/31/17) | 9014 Timber Path | San Antonio | TX | 78250 | 45-5652 |
| Sweeny House | SSC Sweeny Operating Company LLC | 109 McKinney (P.O. Box 187) | Sweeny | TX | 77480 | 67-5344 |
| Texoma Healthcare Center | Fannin County Hospital Authority (03/31/17) | 1000 Highway 82 East | Sherman | TX | 75090 | 45-5573 |

Exhibit A

Sava Retained Facilities

| Facility | Operating Company | Address | City | State | Zip | Phone |
|---|---|---|---|---|---|---|
| The Park in Plano | Plano Operating Company LLC | 3208 Thunderbird Lane | Plano | TX | 75075 | 67-5113 |
| Westchase Health and Rehabilitation Center | OakBend Medical Center (06/01/15) | 8820 Town Park Drive | Houston | TX | 77036 | 45-5800 |
| Winchester Lodge Healthcare Center | OakBend Medical Center eff 3/31/17 | 1112 Smith Drive | Alvin | TX | 77511 | 67-6264 |
| Grande Prairie Health and Rehabilitation Center | SSC Pleasant Prairie Operating Company LLC | 10330 Prairie Ridge Blvd. | Pleasant Prairie | WI | 53158 | 52-5659 |
| Southpointe Healthcare Center | SSC Greenfield Operating Company LLC | 4500 W. Loomis Road | Milwaukee | WI | 53220 | 52-5604 |
| Virginia Highlands Health and Rehabilitation Center | SSC Germantown Operating Company LLC | W173N10915 Bernies Way | Germantown | WI | 53022 | 52-5653 |
| Glasgow Health and Rehabilitation Center | Glasgow Operating Company LLC | 1209 Melrose Avenue & US #60 | Glasgow | WV | 25086 | 51-5118 |
| Huntington Health and Rehabilitation Center | Seventeenth Street Associates LLC | 1720 17th Street | Huntington | WV | 25701 | 51-5007 |
| Morgantown Health and Rehabilitation Center | Morgantown Operating Company LLC | 1379 Van Voorhis Road | Morgantown | WV | 26505 | 51-5049 |
| Riverside Health and Rehabilitation Center | St. Albans Operating Company LLC | 6500 MacCorkle Avenue SW | St. Albans | WV | 25177 | 51-5035 |

**Exhibit B**

**Excess Revenue Payment Calculation**

| | |
|---|---|
| Fiscal Year | 202___ [insert year] |
| | |
| Annual Net Revenue[1] of the Retained Facilities that are not Participants in Upper Payment Limit Reimbursement Programs | $xxx,xxx,xxx,xxx |
| | |
| Annual Net Revenue of Retained Facilities that are Participants in Upper Payment Limit Reimbursement Programs[2] | $xxx,xxx,xxx,xxx |
| | |
| Less:  Reserves for Third Party Payors | ($xx,xxx,xxx) |
| | |
| Less:  Contractual Adjustment | ($xx,xxx,xxx) |
| | |
| Less:  Charity Care Adjustments | ($xx,xxx,xxx) |
| | |
| Less:  Dedicated Expenditures Specified by 3rd Party Payors | ($xx,xxx,xxx) |
| | |
| **Adjusted Net Revenue** | **$x,xxx,xxx,xxx** |
| | |
| | |
| | |
| Starting Threshold (for fiscal year 2021, $1,300,000,000; for all subsequent fiscal years, the prior fiscal year's Adjusted Threshold) | $x,xxx,xxx,xxx |
| | |
| Less: Annual Net Revenue of Divested Facilities | ($xxx,xxx,xxx) |
| | |
| Adjusted Threshold | ($x,xxx,xxx,xxx) |
| | |
| **Excess Total Net Revenue (Adjusted Net Revenue – Adjusted Threshold)** | **$xx,xxx,xxx** |

---

[1]  The terms used in this Exhibit B are defined in Paragraph 1.b of the Agreement.

[2]  With respect to those Retained Facilities that participate in Upper Payment Limit Reimbursement Programs and are both leased and managed by subsidiaries of Sava, Net Revenues will be derived from consolidating the revenue from nursing home operations of the manager and operator of the Retained Facility.

1

| | |
|---|---|
| Excess Revenue Payment (Excess Total Net Revenue x 5%) | $x,xxx,xxx |
| Excess Total Net Revenue paid from previous years [insert years] | ($x,xxx,xxx) |
| **Excess Revenue Payment Due[3]** | **$x,xxx,xxx** |

 

 

 **I hereby certify, under the penalty of perjury, that the foregoing and all supporting information provided for the Excess Revenue Payment Calculation is accurate and complete.**

 

 

| | |
|---|---|
| **Signature** | _____ |
| **Name (Print)** | _____ |
| **Title (CEO/CFO)** | _____ |
| **Dated** | _____ |

---

[3] The total maximum amount potentially to be paid for all years in the aggregate is capped at $7,000,000.

2

**Exhibit C**

**Federal Contingency Payments and State Contingency Payments**

Federal Contingency Payments:

- 83.1461% of the first Five Million Four Hundred Thousand Dollars ($5,400,000) of any Contingency Payments (until the Federal Contingency Payments total Four Million Four Hundred Sixty Four Thousand Eight Hundred Four Dollars ($4,464,804.00)), and 92.2118% of any Contingency Payments above Five Million Four Hundred Thousand Dollars ($5,400,000).

State Contingency Payments:

- 7.0225% of the first Five Million Four Hundred Thousand Dollars ($5,400,000) of any Contingency Payments (until the Federal Contingency Payments total Three Hundred Seventy Seven Thousand Ninety Five Dollars ($377,095.00)), and 7.7882% of any Contingency Payments above Five Million Four Hundred Thousand Dollars ($5,400,000).

**Exhibit D**

**Sava Payments to Relators**

Relators' Upfront Fees and Costs Payments:

- To Tennessee Relators: One Million Two Hundred Twenty Two Thousand Sixty Seven Dollars ($1,222,067.00), to be paid as follows:
    - Four Hundred Ninety-One Thousand, Eight Hundred Eighty-One Dollars and Ninety-Seven Cents ($491,881.97) to Relator Hayward;
    - Four Hundred Ninety-One Thousand, Eight Hundred Eighty-One Dollars and Ninety-Seven Cents ($491,881.97) to Relator Kukoyi; and
    - Two Hundred Thirty-Eight Thousand, Three Hundred Three Dollars and Seven Cents ($238,303.07) to Relator Scott.

- To Pennsylvania Relators: Sixty Nine Thousand Eight Hundred Thirty Two Dollars ($69,832.00).

Relators' Contingency Fees and Costs Payments:

- To Tennessee Relators:
    - 9.8314% of the first Five Million Four Hundred Thousand Dollars ($5,400,000.00) of any Contingency Payments (until the Tennessee Action Relators have received a total of One Million Seven Hundred Fifty Two Thousand Nine Hundred Sixty Two Dollars and Sixty Four Cents ($1,752,962.64) combined between Upfront Fees and Costs Payments and Contingency Fees and Costs Payments), to be paid as follows:
        - 40.25% to Relator Hayward;
        - 40.25% to Relator Kukoyi; and
        - 19.5% to Relator Scott.

- To Pennsylvania Relators:
    - None.

**Exhibit E**

**Relators' Share**

As provided in Paragraph 2, the United States shall make the following payments to Relators:

- Federal Upfront Payment
  - To Relator Hayward for Covered Conduct in Paragraph I.1:
    - One Million Eight Hundred Ninety Two Thousand Four Hundred Fifty Eight Dollars ($1,892,458.00)
  - To Relator Kukoyi for Covered Conduct in Paragraph I.2:
    - Sixty Nine Thousand Eight Hundred Thirty Two ($69,832.00)
  - To the Pennsylvania Relators for Covered Conduct in Paragraph I.3:
    - One Hundred Four Thousand Seven Hundred Forty Nine ($104,749.00)

- Federal Contingency Payments
  - Any Federal Contingency Payment shall be allocated as follows:
    - Covered Conduct described in Paragraph I.1:
      - 91.55%
    - Covered Conduct described in Paragraph I.2:
      - 3.38%
    - Covered Conduct described in Paragraph I.3:
      - 5.07%

  - Relator Hayward shall receive a Twenty Percent (20%) share of any Federal Contingency Payment allocated to the Covered Conduct described in Paragraph I.1.

  - Relator Kukoyi shall receive a Twenty Percent (20%) share of any Federal Contingency Payment allocated to the Covered Conduct described in Paragraph I.2.

  - The Pennsylvania Relators shall receive a Twenty Percent (20%) share of any Federal Contingency Payment resulting from the Insurance Contingency described in Paragraph 1.b.ii that is allocated to the Covered Conduct described in Paragraph I.3.