

**KEYS MEDICAL**
STAFFING AND SERVICES
**PO Box 10612**
**Chicago, IL 60610**
**Office: 312-888-9022**

**Staffing Services Agreement**

The purpose of this agreement ("Agreement") is to set forth the agreement between SSC Atlanta Operating Company LLC d/b/a Sandy Springs Health and Rehabilitation Center ("The Client") and ***Keys Medical Staffing, LLC.**, an Illinois limited liability company* (The "Company"), Client and the Company are sometimes collectively referred to as "Parties" and individually as "Party".

The Client desires to retain the Company to provide qualified temporary medical staffing services ("TMS") to the Client at its facility. Temporary medical staffing (TMS) shall be defined to be registered nurses, licensed vocational or practical nurses or certified nurses' aides. Accordingly, the Parties mutually agree:

**1) Services.** As requested by Client, the Company will provide TMS to provide Services at the facility in accordance with their license or certification and in accordance with the Client policies and procedures, all TMS will be screened to ensure they have the following: i) unencumbered license or registration to practice in the State of Georgia (Rn, LPN/LVN or CNA), ii) I-9 documentation and E-Verify completed that demonstrates Company's Temporary Medical Staff's right to work in the United States, iii) a clear criminal background check, iv) ten panel drug screen, v) negative TB test, vi) Hepatitis B declination or vaccine series and vii) all other skills testing required under applicable State law.

**2)    Temporary Medical Staff.** As requested, and approved by Client, the Company will assign individuals ("TMS") to provide TMS to the Client during the time periods as provided in Schedule 1. The Company is responsible for credentialing of Medical Staff and will provide credential details to Client. Medical Staff members will be under direct supervision of the Company in the performance of their duties. Company will solely determine the method, details, and means of performing the Services to be provided to Client, including ensuring that the Medical Staff is using the proper PPE while performing the Services; provided that such Medical Staff shall at all times comply with all applicable laws, rules, and regulations, all applicable Client policies, procedures, and protocols, and all applicable professional standards. Client shall not control the manner or determine the method of accomplishing such Services; provided that such Services shall at all times be performed in compliance with all applicable laws, rules, and regulations, all applicable Client policies, procedures, and protocols, and all applicable professional standards. Client shall be entitled to exercise a broad general power of supervision and control over the results of the Services performed by Service Provider and to ensure the Services are being provided per Client's expectations.

**3)    Equipment.** The Client shall provide all equipment, supplies, personal protective equipment (PPE) and other items necessary for Medical Staff to render the Services described in Schedule 1. The Parties understand that all Medical Staff members are employees of the Company and shall not be deemed employees of the Client. Accordingly, all compensation, including salary and any benefits paid to Medical Staff members shall be the Company's responsibility. Company agrees that its Medical Staff will be qualified health professionals sufficiently trained to perform the Services for Client, and that each will have a level of skill in the area commensurate with the requirements of the Services it will be performing and that its

Medical Staff will perform the work in a good workmanlike manner consistent with generally accepted industry standards and in compliance with all applicable local, state and federal laws.

**4)** **Reliance.** The Client and the Company acknowledge and agree, each to the other, that while the Company will make reasonable efforts to provide TMS to meet the Client's staffing needs, the Company shall not be liable for any loss or damage sustained by the Client due to the Company's inability to provide TMS.

**5)** **Term.** The term of this Agreement shall be for one year, provided however either party may terminate this Agreement with fifteen (15) days written notice to the other Party at any time with or without cause.

**6)** **Compensation.** The Client shall pay the Company for the Services provided by Medical Staff at the daily rates set forth in Schedule 1.

**7)** **Billing.** The Company will bill the Client for services on a weekly basis for TMS provided during such week. All invoices shall be submitted weekly to APADMIN@savasc.com Any invoice not received within sixty days (60) of the date the services were rendered at the email address above shall not be the responsibility of Client to pay. All invoices timely received the payment is due after thirty (30) days of receipt of the submitted invoice. With respect to a Medical Staff member who becomes a full time, part time or temporary employee of Client, upon commencement of employment, the Company will bill the Client a Placement Fee pursuant to the provisions of Section 9 below. Payment for Services and Placement Fees shall be due no later than fifteen (15) business days after the Billing Date or date of the invoice for Placement Fees. Past due invoices will accrue interest at the annual rate eighteen percent (18%) per month on the outstanding unpaid balance.

**8)** **Insurance.** The Company shall maintain Worker's Compensation Insurance coverage for all Company's employees in the statutory amount and General Liability Insurance with a minimum amount of one million dollars ($1,000,000.00) per occurrence.  The Company shall maintain professional liability insurance covering all Temporary Medical Staff (TMS) assigned to Client's facility in the amount of One million per occurrence ($1,000,000.00) and three million in the aggregate ($3,000,000.00). The Company shall provide the Client with a Certificate of Insurance upon the Client's request. The Company hereby agrees to indemnify and hold the Client harmless from and against any and all losses, damages, claims, causes of action and expenses connected therewith (including reasonable attorney fees), caused or asserted to have been caused, directly or indirectly, by or as a result of any claim for Worker's Compensation asserted by Medical Staff member and against any third party claims asserting a  professional liability claim based upon the negligence of any Temporary Medical Staff assigned to Client's facility. .

**9)** **Placement Fee.** If Client hires a Medical Staff member to become a full time, part time or temporary employee, the Client shall pay the Company a placement fee ("Placement Fee") as follows:

a. For a full-time and part time employee, the Placement Fee shall be equal to twenty-five percent (25%) of the annual salary payable to such employee.

b. For a temporary employee, the Placement Fee shall be equal to twenty-five percent (25%) of the salary payable to such employee during the temporary employment period. The term temporary employee shall mean a Medical Staff member hired by the Client for a period less than twelve (12) months.

c. For each full-time, part time and temporary employee offered and employed by Client, the Client shall deliver a certificate signed by its chief financial officer or equivalent. The certificate shall certify the annual salary payable to such Medical Staff member employed as a full time or

part time employee, and in the case of a temporary employee such employee's salary payable during the temporary employment period.

d. The Company shall have the right to examine the payroll records of any Medical Staff member who is placed by the Client and becomes a full-time or part time employee or temporary employee of the Client.

e. Client acknowledges and agrees that the Placement Fee is nonrefundable.

**10. Compliance Program and Code of Conduct.** COMPANY acknowledges that it is aware that CLIENT 's compliance program is designed to promote compliance by the CLIENT and its covered contractors, including COMPANY with the requirements of Medicare, Medicaid and other federal health care programs. COMPANY further acknowledges that it has received a copy of the CLIENT 's Code of Conduct. COMPANY and its employees, agents or contractors shall immediately notify the CLIENT of any violations or suspected violations of the Code of Conduct, including violations of laws governing Medicare, Medicaid and other federal healthcare programs, by notifying the CLIENT 's Compliance Hotline as set forth in the Code of Conduct.

**11. HIPAA** COMPANY through its employees and contractors will perform the services or functions set forth elsewhere in this Agreement. Subject to the terms and conditions of this Agreement and the HIPAA Privacy Standards, COMPANY may use Protected Health Information as reasonably necessary for the purposes herein, for the proper management and administration of the AGENCY's business, employee or contractors providing services hereunder will comply in all material respects with the HIPAA Privacy Standards when using or disclosing Protected Health Information, which it receives directly, or indirectly from CLIENT or in performance of its duties under this Agreement. In furtherance of the foregoing, COMPANY agrees to: only use PHI to the extent necessary to perform its duties pursuant to this Agreement, and to use and disclose the minimum PHI necessary to perform its duties pursuant to this Agreement and to reasonably safeguard the PHI from being used or disclosed except as permitted. COMPANY agrees to promptly notify CLIENT if COMPANY or its employees or contractors breach any statutory or regulatory requirement to protect patient PHI.

**12. Eligibility to Participate in Federal Health Care Programs.** The Parties represent and warrant to each other that: (a) neither it nor any of its representatives contractors, or employees, who will provide services to or on behalf of CLIENT , are currently excluded, suspended, debarred or otherwise ineligible to participate in federal health care programs, including the Medicare and Medicaid programs; and (b) neither it nor any of its representatives contractors or employees who will provide services pursuant to the Agreement, have been convicted of a criminal offense related to the provision of health care items or services that would lead to mandatory exclusion from federal health care programs, but have not yet been excluded. COMPANY agrees, on an annual basis, to check its list of all employees, agents, and subcontractors against the OIG/GSA exclusion list to assure that employees, agents, and subcontractors are not currently excluded, suspended, debarred or otherwise ineligible to participate in federal health care programs, including the Medicare and Medicaid programs; and (b) neither it nor any of its representatives who will provide services pursuant to the Agreement, have been convicted of a criminal offense related to the provision of health care items or services that would lead to mandatory exclusion from federal health care programs, but have not yet been excluded.

13. Compliance with Laws. Both parties agree to comply fully with all applicable federal, state, and local laws, rules and regulations, including, but not limited to (i) Title VI of the Civil Rights Act of 1964; (ii) Section 504 of the Rehabilitation Act of 1973; (iii) the Age Discrimination Act of 1975, and related requirements imposed by the Department of Health and Human Services (45 C.F.R.,

Par. 80); (iv) the OSHA Bloodborne Pathogen Standard, as may be amended from t i m e  to time; (v) the Fair and Accurate Credit Transactions Act of 2003 (FACTA) and its implementing regulations

14. **Books and Records** For the purpose of implementing Section 1861 (v)(l)(I) of the Social Security Act, as amended, and any written regulations thereto, Company agrees b comply with statutory requirements governing the maintenance of documents to verify the cost of services rendered under this Agreement as follows:  Until the expiration of four years after the furnishing of such services pursuant to this Agreement, Company shall make available, upon written request by the Facility and/or the Secretary of Health and Human Services, or upon request of any of their duly authorized representatives, the contracts, books, documents and records of Company that are necessary to certify the nature and extent of such costs, and; if Company carries out any of the duties of this Agreement through a subcontract, with a value or cost of Ten Thousand Dollars ($10,000) or more over a twelve (12) month period, with a related organization [as that term is defined with regard to a provider in Title 42 of the Code of Federal Regulations 405.427(b)], such subcontract shall contain a clause to the effect that until the expiration of four years after the furnishing of such services pursuant to such subcontract, the related, organization shall make available, upon written request, the subcontract, and books, documents and records of such organization that are necessary to verify the nature and extent of such costs.

15. **Right to Dismiss** Facility has the right to dismiss any Company Temporary Medical Staff that it deems to be incompetent or that is putting the health and safety of residents at issues by their acts or omissions. If the Facility dismisses a Company Temporary Medical Staff under either of conditions in the foregoing sentence it shall only be required to pay Company for the actual hours worked by the Company Temporary Medical Staff.  Facility shall give notice to Company no later than the next business day after dismissing a Company Temporary Medical Staff.

16. **Confidentiality.**  The Company agrees not to disclose or otherwise make available Confidential Information of the Client or Client's employees to any third party without the prior written consent of the Client. Company agrees to keep the Confidential Information in strictest confidence, using the same degree of care that it normally uses to protect its own proprietary information, but no less than reasonable care. Confidential information means all information belonging to the Client or the Client's employees or provided to the Company by the Client or the Client's employees that is not known generally to the public or the Client's competitors. Confidential Information includes, but is not limited to: software, documentation, reports, manuals, letters, programs, data, information regarding financial reporting, inventory tracking and other computer-based systems, Client's employees' personally identifiable information, services, research, trade secrets and all  information provided by the Client or the Client's employees and related to Client's employees, including without limitation, any information provided or learned by Medical Staff during the medical screening process that Medical Staff will perform for Client per Schedule 1. Company agrees to inform Medical Staff of its obligations of confidentiality and to indemnify Client for any breach of the Confidentiality obligations by any Medical Staff. Company agrees that all the Services performed under this Agreement shall be performed in compliance with HIPAA and all other applicable laws, rules, and regulations governing the privacy and security of protected health information (PHI).

17. **Mutual Indemnification.** The parties agree to indemnify, defend and hold harmless each other and their respective officers, directors, members, managers, employees, agents, affiliates, parent, subsidiaries, permitted successors and assignees from and against any and all claims, counterclaims, suits, demands, actions, causes of action, damages, penalties, injuries, setoffs, liens, attachments, judgments, debts, costs, expenses (including without limitation attorneys' fees and expenses) or other liabilities of every character whatsoever (collectively, "Liabilities") for any third party claims arising out of acts of negligence, gross negligence or willful misconduct of the other party, or its agents or employees.

18.    **Severability.** It is the intent of the parties that if any court of competent jurisdiction determines that any provision of this Agreement is invalid or unenforceable, then such invalidity or unenforceability shall have no effect on the other provisions hereof, which shall remain valid, binding and enforceable and in full force and effect, and, to the extent allowed by law.

19.    **Governing law.** This Agreement is to be governed by the current laws of the State of Georgia where the Services are rendered without giving effect to provisions thereof regarding conflict of laws.

20.    **Entire Agreement and Amendment.** This Agreement (including any documents referred to herein) sets forth the entire understanding of the parties hereto with respect to the subject matter contemplated hereby. Any and all previous agreements and understandings between or among the parties regarding the subject matter hereof, whether written or oral, are superseded by this Agreement. This Agreement shall not be amended or modified except by a written instrument duly executed and signed by both parties.

21    **Waiver.** If either Party fails to enforce any provision contained within this Agreement, it shall not be construed as a waiver or limitation of that Party's right to subsequently enforce and compel strict compliance with every provisions of this Agreement.

22.    **Costs and Attorney's Fees.** If possible, any disputes hereunder shall be settled amicably. The Company shall be entitled to recover reasonable attorney's fees and costs in connection with the collection of invoices for Services and Expenses.

23.    **Miscellaneous.**

A.    The undersigned Parties warrant each to the other that they possess the legal authority to enter into this Agreement.

B.    If signed by the parties document shall be transmitted via facsimile or email, it is agreed that facsimile or email will create and constitute the original legally binding and enforceable Agreement.

**Signature Page Follows**

Agreed:

Company: Keys Medical Staffing, LLC

Print Name: _____Christy Collins_____

Title: ___COO_____

Signature: _Christy Collins_____

Date__12/29/21_____

Client: SSC Atlanta Operating Company LLC d/b/a Sandy Springs Health and Rehabilitation Center

Print Name: _Shalonda Wells_____

Title: Administrator    NHA

Signature: _____

Date_____12/29/21_____



## Cost Proposal

| Positions (Job Titles)<br>Nurses: RN. LPN. CNA | Maximum Fully-<br>Loaded Hourly<br>Staff Rates |
|---|---|
| RN | $63.00 |
| LPN | $54.00 |
| CNA | $40.00 |

\*\*\* Weekends, holidays, and overtime hourly rate: x 1.5hr

\*\*\* Shift differential will be an additional $1 per shift

### Base bill rate increase hourly for the following Position:

| | |
|---|---|
| \*\*\*Assistant Director of Nursing | $16.40/hr |
| \*\*\*Unit Manager | $9.00/hr |
| \*\*\*Unit Supervisor | $6.20/hr |



**KEYS MEDICAL**
STAFFING AND SERVICES
PO Box 10612
Chicago, IL 60610
Office: 312-888-9022

**Staffing Services Agreement**

The purpose of this agreement ("Agreement") is to set forth the agreement between Marietta Operating Company LLC d/b/a Roselane Health and Rehabilitation Center ("The Client") and ***Keys Medical Staffing, LLC.***, *an Illinois limited liability company* (The "Company"), Client and the Company are sometimes collectively referred to as "Parties" and individually as "Party".

The Client desires to retain the Company to provide qualified temporary medical staffing services ("TMS") to the Client at its facility. Temporary medical staffing (TMS) shall be defined to be registered nurses, licensed vocational or practical nurses or certified nurses' aides. Accordingly, the Parties mutually agree:

**1) Services.** As requested by Client, the Company will provide TMS to provide Services at the facility in accordance with their license or certification and in accordance with the Client policies and procedures, all TMS will be screened to ensure they have the following: i) unencumbered license or registration to practice in the State of Georgia (Rn, LPN/LVN or CNA), ii) I-9 documentation and E-Verify completed that demonstrates Company's Temporary Medical Staff's right to work in the United States, iii) a clear criminal background check, iv) ten panel drug screen, v) negative TB test, vi) Hepatitis B declination or vaccine series and vii) all other skills testing required under applicable State law.

**2)    Temporary Medical Staff.** As requested, and approved by Client, the Company will assign individuals ("TMS") to provide TMS to the Client during the time periods as provided in Schedule 1. The Company is responsible for credentialing of Medical Staff and will provide credential details to Client. Medical Staff members will be under direct supervision of the Company in the performance of their duties. Company will solely determine the method, details, and means of performing the Services to be provided to Client, including ensuring that the Medical Staff is using the proper PPE while performing the Services; provided that such Medical Staff shall at all times comply with all applicable laws, rules, and regulations, all applicable Client policies, procedures, and protocols, and all applicable professional standards. Client shall not control the manner or determine the method of accomplishing such Services; provided that such Services shall at all times be performed in compliance with all applicable laws, rules, and regulations, all applicable Client policies, procedures, and protocols, and all applicable professional standards. Client shall be entitled to exercise a broad general power of supervision and control over the results of the Services performed by Service Provider and to ensure the Services are being provided per Client's expectations.

**3)    Equipment.** The Client shall provide all equipment, supplies, personal protective equipment (PPE) and other items necessary for Medical Staff to render the Services described in Schedule 1. The Parties understand that all Medical Staff members are employees of the Company and shall not be deemed employees of the Client. Accordingly, all compensation, including salary and any benefits paid to Medical Staff members shall be the Company's responsibility. Company agrees that its Medical Staff will be qualified health professionals sufficiently trained to perform the Services for Client, and that each will have a level of skill in the area commensurate with the requirements of the Services it will be performing and that its

Medical Staff will perform the work in a good workmanlike manner consistent with generally accepted industry standards and in compliance with all applicable local, state and federal laws.

**4)**    **Reliance.** The Client and the Company acknowledge and agree, each to the other, that while the Company will make reasonable efforts to provide TMS to meet the Client's staffing needs, the Company shall not be liable for any loss or damage sustained by the Client due to the Company's inability to provide TMS.

**5)**    **Term.** The term of this Agreement shall be for one year, provided however either party may terminate this Agreement with fifteen (15) days written notice to the other Party at any time with or without cause.

**6)**    **Compensation.** The Client shall pay the Company for the Services provided by Medical Staff at the daily rates set forth in Schedule 1.

**7)**    **Billing.** The Company will bill the Client for services on a weekly basis for TMS provided during such week. All invoices shall be submitted weekly to APADMIN@savasc.com Any invoice not received within sixty days (60) of the date the services were rendered at the email address above shall not be the responsibility of Client to pay._All invoices timely received the payment is due after thirty (30) days of receipt of the submitted invoice. With respect to a Medical Staff member who becomes a full time, part time or temporary employee of Client, upon commencement of employment, the Company will bill the Client a Placement Fee pursuant to the provisions of Section 9 below. Payment for Services and Placement Fees shall be due no later than fifteen (15) business days after the Billing Date or date of the invoice for Placement Fees. Past due invoices will accrue interest at the annual rate eighteen percent (18%) per month on the outstanding unpaid balance.

**8)**    **Insurance.** The Company shall maintain Worker's Compensation Insurance coverage for all Company's employees in the statutory amount and General Liability Insurance with a minimum amount of one million dollars ($1,000,000.00) per occurrence.  The Company shall maintain professional liability insurance covering all Temporary Medical Staff (TMS) assigned to Client's facility in the amount of One million per occurrence ($1,000,000.00) and three million in the aggregate ($3,000,000.00). The Company shall provide the Client with a Certificate of Insurance upon the Client's request. The Company hereby agrees to indemnify and hold the Client harmless from and against any and all losses, damages, claims, causes of action and expenses connected therewith (including reasonable attorney fees), caused or asserted to have been caused, directly or indirectly, by or as a result of any claim for Worker's Compensation asserted by Medical Staff member and against any third party claims asserting a  professional liability claim based upon the negligence of any Temporary Medical Staff assigned to Client's facility. .

**9)**    **Placement Fee.** If Client hires a Medical Staff member to become a full time, part time or temporary employee, the Client shall pay the Company a placement fee ("Placement Fee") as follows:

a.  For a full-time and part time employee, the Placement Fee shall be equal to twenty-five percent (25%) of the annual salary payable to such employee.

b.  For a temporary employee, the Placement Fee shall be equal to twenty-five percent (25%) of the salary payable to such employee during the temporary employment period. The term temporary employee shall mean a Medical Staff member hired by the Client for a period less than twelve (12) months.

c.  For each full-time, part time and temporary employee offered and employed by Client, the

Client shall deliver a certificate signed by its chief financial officer or equivalent. The certificate shall certify the annual salary payable to such Medical Staff member employed as a full time or part time employee, and in the case of a temporary employee such employee's salary payable during the temporary employment period.

d. The Company shall have the right to examine the payroll records of any Medical Staff member who is placed by the Client and becomes a full-time or part time employee or temporary employee of the Client.

e. Client acknowledges and agrees that the Placement Fee is nonrefundable.

**10. Compliance Program and Code of Conduct.** COMPANY acknowledges that it is aware that CLIENT 's compliance program is designed to promote compliance by the CLIENT and its covered contractors, including COMPANY with the requirements of Medicare, Medicaid and other federal health care programs. COMPANY further acknowledges that it has received a copy of the CLIENT 's Code of Conduct. COMPANY and its employees, agents or contractors shall immediately notify the CLIENT of any violations or suspected violations of the Code of Conduct, including violations of laws governing Medicare, Medicaid and other federal healthcare programs, by notifying the CLIENT 's Compliance Hotline as set forth in the Code of Conduct.

**11. HIPAA** COMPANY through its employees and contractors will perform the services or functions set forth elsewhere in this Agreement. Subject to the terms and conditions of this Agreement and the HIPAA Privacy Standards, COMPANY may use Protected Health Information as reasonably necessary for the purposes herein, for the proper management and administration of the AGENCY's business, employee or contractors providing services hereunder will comply in all material respects with the HIPAA Privacy Standards when using or disclosing Protected Health Information, which it receives directly, or indirectly from CLIENT or in performance of its duties under this Agreement. In furtherance of the foregoing, COMPANY agrees to: only use PHI to the extent necessary to perform its duties pursuant to this Agreement, and to use and disclose the minimum PHI necessary to perform its duties pursuant to this Agreement and to reasonably safeguard the PHI from being used or disclosed except as permitted. COMPANY agrees to promptly notify CLIENT if COMPANY or its employees or contractors breach any statutory or regulatory requirement to protect patient PHI.

**12. Eligibility to Participate in Federal Health Care Programs.** The Parties represent and warrant to each other that: (a) neither it nor any of its representatives contractors, or employees, who will provide services to or on behalf of CLIENT , are currently excluded, suspended, debarred or otherwise ineligible to participate in federal health care programs, including the Medicare and Medicaid programs; and (b) neither it nor any of its representatives contractors or employees who will provide services pursuant to the Agreement, have been convicted of a criminal offense related to the provision of health care items or services that would lead to mandatory exclusion from federal health care programs, but have not yet been excluded. COMPANY agrees, on an annual basis, to check its list of all employees, agents, and subcontractors against the OIG/GSA exclusion list to assure that employees, agents, and subcontractors are not currently excluded, suspended, debarred or otherwise ineligible to participate in federal health care programs, including the Medicare and Medicaid programs; and (b) neither it nor any of its representatives who will provide services pursuant to the Agreement, have been convicted of a criminal offense related to the provision of health care items or services that would lead to mandatory exclusion from federal health care programs, but have not yet been excluded.

13. Compliance with Laws. Both parties agree to comply fully with all applicable federal,

state, and local laws, rules and regulations, including, but not limited to (i) Title VI of the Civil Rights Act of 1964; (ii) Section 504 of the Rehabilitation Act of 1973; (iii) the Age Discrimination Act of 1975, and related requirements imposed by the Department of Health and Human Services (45 C.F.R., Par. 80); (iv) the OSHA Bloodborne Pathogen Standard, as may be amended from t i m e to time; (v) the Fair and Accurate Credit Transactions Act of 2003 (FACTA) and its implementing regulations

14.   **Books and Records** For the purpose of implementing Section 1861 (v)(l)(I) of the Social Security Act, as amended, and any written regulations thereto, Company agrees b comply with statutory requirements governing the maintenance of documents to verify the cost of services rendered under this Agreement as follows:  Until the expiration of four years after the furnishing of such services pursuant to this Agreement, Company shall make available, upon written request by the Facility and/or the Secretary of Health and Human Services, or upon request of any of their duly authorized representatives, the contracts, books, documents and records of Company that are necessary to certify the nature and extent of such costs, and; if Company carries out any of the duties of this Agreement through a subcontract, with a value or cost of Ten Thousand Dollars ($10,000) or more over a twelve (12) month period, with a related organization [as that term is defined with regard to a provider in Title 42 of the Code of Federal Regulations 405.427(b)], such subcontract shall contain a clause to the effect that until the expiration of four years after the furnishing of such services pursuant to such subcontract, the related, organization shall make available, upon written request, the subcontract, and books, documents and records of such organization that are necessary to verify the nature and extent of such costs.

15. **Right to Dismiss** Facility has the right to dismiss any Company Temporary Medical Staff that it deems to be incompetent or that is putting the health and safety of residents at issues by their acts or omissions. If the Facility dismisses a Company Temporary Medical Staff under either of conditions in the foregoing sentence it shall only be required to pay Company for the actual hours worked by the Company Temporary Medical Staff.  Facility shall give notice to Company no later than the next business day after dismissing a Company Temporary Medical Staff.

16.   **Confidentiality.**   The Company agrees not to disclose or otherwise make available Confidential Information of the Client or Client's employees to any third party without the prior written consent of the Client. Company agrees to keep the Confidential Information in strictest confidence, using the same degree of care that it normally uses to protect its own proprietary information, but no less than reasonable care. Confidential Information means all information belonging to the Client or the Client's employees or provided to the Company by the Client or the Client's employees that is not known generally to the public or the Client's competitors. Confidential Information includes, but is not limited to: software, documentation, reports, manuals, letters, programs, data, information regarding financial reporting, inventory tracking and other computer-based systems, Client's employees' personally identifiable information, services, research, trade secrets and all information provided by the Client or the Client's employees and related to Client's employees, including without limitation, any information provided or learned by Medical Staff during the medical screening process that Medical Staff will perform for Client per Schedule 1. Company agrees to inform Medical Staff of its obligations of confidentiality and to indemnify Client for any breach of the Confidentiality obligations by any Medical Staff. Company agrees that all the Services performed under this Agreement shall be performed in compliance with HIPAA and all other applicable laws, rules, and regulations governing the privacy and security of protected health information (PHI).

17.           **Mutual Indemnification.** The parties agree to indemnify, defend and hold harmless each other and their respective officers, directors, members, managers, employees, agents, affiliates, parent, subsidiaries, permitted successors and assignees from and against any and all claims, counterclaims, suits, demands, actions, causes of action, damages, penalties, injuries, setoffs, liens, attachments, judgments, debts, costs, expenses (including without limitation attorneys' fees and

expenses) or other liabilities of every character whatsoever (collectively, "Liabilities") for any third party claims arising out of acts of negligence, gross negligence or willful misconduct of the other party, or its agents or employees.

**18.** **Severability.** It is the intent of the parties that if any court of competent jurisdiction determines that any provision of this Agreement is invalid or unenforceable, then such invalidity or unenforceability shall have no effect on the other provisions hereof, which shall remain valid, binding and enforceable and in full force and effect, and, to the extent allowed by law.

**19.** **Governing law.** This Agreement is to be governed by the current laws of the State of Georgia where the Services are rendered without giving effect to provisions thereof regarding conflict of laws.

**20.** **Entire Agreement and Amendment.** This Agreement (including any documents referred to herein) sets forth the entire understanding of the parties hereto with respect to the subject matter contemplated hereby. Any and all previous agreements and understandings between or among the parties regarding the subject matter hereof, whether written or oral, are superseded by this Agreement. This Agreement shall not be amended or modified except by a written instrument duly executed and signed by both parties.

**21** **Waiver.** If either Party fails to enforce any provision contained within this Agreement, it shall not be construed as a waiver or limitation of that Party's right to subsequently enforce and compel strict compliance with every provisions of this Agreement.

**22.** **Costs and Attorney's Fees.** If possible, any disputes hereunder shall be settled amicably. The Company shall be entitled to recover reasonable attorney's fees and costs in connection with the collection of invoices for Services and Expenses.

**23.** Miscellaneous.

A.   The undersigned Parties warrant each to the other that they possess the legal authority to enter into this Agreement.

B.   If signed by the parties document shall be transmitted via facsimile or email, it is agreed that facsimile or email will create and constitute the original legally binding and enforceable Agreement.

**Signature Page Follows**

Agreed:

Company: Keys Medical Staffing, LLC

Print Name:_____Christy Collins_____

Title:__COO_____

Signature: *Christy Collins*

Date_____May 5, 2021_____

Client: Marietta Operating Company LLC d/b/a Roselane Health and Rehabilitation Center

Print Name: M. Christy Harper CMHA

Title: Administrator

Signature: MChrity Harper CMHA

Date_____5/6/21_____



## Cost Proposal

| Positions (Job Titles)<br>Nurses: RN. LPN. CNA | Maximum Fully-Loaded Hourly Rates 2020 | Maximum Fully-Loaded Hourly Rates 2021 |
|---|---|---|
| RN | $62.00 | $62.48 |
| LPN | $41.50 | $42.06 |
| CNA | $30.65 | $31.02 |

\* \* \* Weekends, holidays, and overtime hourly rate: x 1.5hr

\* \* \* Shift differential will be an additional $1 per shift



**KEYS MEDICAL**
STAFFING AND SERVICES
PO Box 10612
Chicago, IL 60610
Office: 312-888-9022

**Staffing Services Agreement**

The purpose of this agreement ("Agreement") is to set forth the agreement between Rome Operating Company LLC d/b/a Rome Health and Rehabilitation Center ("The Client") and ***Keys Medical Staffing, LLC., an Illinois limited liability company*** (The "Company"), Client and the Company are sometimes collectively referred to as "Parties" and individually as "Party".

The Client desires to retain the Company to provide qualified temporary medical staffing services ("TMS") to the Client at its facility. Temporary medical staffing (TMS) shall be defined to be registered nurses, licensed vocational or practical nurses or certified nurses' aides. Accordingly, the Parties mutually agree:

**1) Services.** As requested by Client, the Company will provide TMS to provide Services at the facility in accordance with their license or certification and in accordance with the Client policies and procedures, all TMS will be screened to ensure they have the following: i) unencumbered license or registration to practice in the State of Georgia (Rn, LPN/LVN or CNA), ii) I-9 documentation and E-Verify completed that demonstrates Company's Temporary Medical Staff's right to work in the United States, iii) a clear criminal background check, iv) ten panel drug screen, v) negative TB test, vi) Hepatitis B declination or vaccine series and vii) all other skills testing required under applicable State law.

**2)     Temporary Medical Staff.** As requested, and approved by Client, the Company will assign individuals ("TMS") to provide TMS to the Client during the time periods as provided in Schedule 1. The Company is responsible for credentialing of Medical Staff and will provide credential details to Client. Medical Staff members will be under direct supervision of the Company in the performance of their duties. Company will solely determine the method, details, and means of performing the Services to be provided to Client, including ensuring that the Medical Staff is using the proper PPE while performing the Services; provided that such Medical Staff shall at all times comply with all applicable laws, rules, and regulations, all applicable Client policies, procedures, and protocols, and all applicable professional standards. Client shall not control the manner or determine the method of accomplishing such Services; provided that such Services shall at all times be performed in compliance with all applicable laws, rules, and regulations, all applicable Client policies, procedures, and protocols, and all applicable professional standards. Client shall be entitled to exercise a broad general power of supervision and control over the results of the Services performed by Service Provider and to ensure the Services are being provided per Client's expectations.

**3)     Equipment.** The Client shall provide all equipment, supplies, personal protective equipment (PPE) and other items necessary for Medical Staff to render the Services described in Schedule 1. The Parties understand that all Medical Staff members are employees of the Company and shall not be deemed employees of the Client. Accordingly, all compensation, including salary and any benefits paid to Medical Staff members shall be the Company's responsibility. Company agrees that its Medical Staff will be qualified health professionals sufficiently trained to perform the Services for Client, and that each will have a level of skill in the area commensurate with the requirements of the Services it will be performing and that its

Medical Staff will perform the work in a good workmanlike manner consistent with generally accepted industry standards and in compliance with all applicable local, state and federal laws.

**4)**  **Reliance.** The Client and the Company acknowledge and agree, each to the other, that while the Company will make reasonable efforts to provide TMS to meet the Client's staffing needs, the Company shall not be liable for any loss or damage sustained by the Client due to the Company's inability to provide TMS.

**5)**  **Term.** The term of this Agreement shall be for one year, provided however either party may terminate this Agreement with fifteen (15) days written notice to the other Party at any time with or without cause.

**6)**  **Compensation.** The Client shall pay the Company for the Services provided by Medical Staff at the daily rates set forth in Schedule 1.

**7)**  **Billing.** The Company will bill the Client for services on a weekly basis for TMS provided during such week. All invoices shall be submitted weekly to APADMIN@savasc.com Any invoice not received within sixty days (60) of the date the services were rendered at the email address above shall not be the responsibility of Client to pay._All invoices timely received the payment is due after thirty (30) days of receipt of the submitted invoice. With respect to a Medical Staff member who becomes a full time, part time or temporary employee of Client, upon commencement of employment, the Company will bill the Client a Placement Fee pursuant to the provisions of Section 9 below. Payment for Services and Placement Fees shall be due no later than fifteen (15) business days after the Billing Date or date of the invoice for Placement Fees. Past due invoices will accrue interest at the annual rate eighteen percent (18%) per month on the outstanding unpaid balance.

**8)**  **Insurance.** The Company shall maintain Worker's Compensation Insurance coverage for all Company's employees in the statutory amount and General Liability Insurance with a minimum amount of one million dollars ($1,000,000.00) per occurrence. The Company shall maintain professional liability insurance covering all Temporary Medical Staff (TMS) assigned to Client's facility in the amount of One million per occurrence ($1,000,000.00) and three million in the aggregate ($3,000,000.00). The Company shall provide the Client with a Certificate of Insurance upon the Client's request. The Company hereby agrees to indemnify and hold the Client harmless from and against any and all losses, damages, claims, causes of action and expenses connected therewith (including reasonable attorney fees), caused or asserted to have been caused, directly or indirectly, by or as a result of any claim for Worker's Compensation asserted by Medical Staff member and against any third party claims asserting a  professional liability claim based upon the negligence of any Temporary Medical Staff assigned to Client's facility. .

**9)**  **Placement Fee.** If Client hires a Medical Staff member to become a full time, part time or temporary employee, the Client shall pay the Company a placement fee ("Placement Fee") as follows:

a. For a full-time and part time employee, the Placement Fee shall be equal to twenty-five percent (25%) of the annual salary payable to such employee.

b. For a temporary employee, the Placement Fee shall be equal to twenty-five percent (25%) of the salary payable to such employee during the temporary employment period. The term temporary employee shall mean a Medical Staff member hired by the Client for a period less than twelve (12) months.

c. For each full-time, part time and temporary employee offered and employed by Client, the

Client shall deliver a certificate signed by its chief financial officer or equivalent. The certificate shall certify the annual salary payable to such Medical Staff member employed as a full time or part time employee, and in the case of a temporary employee such employee's salary payable during the temporary employment period.

d. The Company shall have the right to examine the payroll records of any Medical Staff member who is placed by the Client and becomes a full-time or part time employee or temporary employee of the Client.

e. Client acknowledges and agrees that the Placement Fee is nonrefundable.

**10. Compliance Program and Code of Conduct.** COMPANY acknowledges that it is aware that CLIENT 's compliance program is designed to promote compliance by the CLIENT and its covered contractors, including COMPANY with the requirements of Medicare, Medicaid and other federal health care programs. COMPANY further acknowledges that it has received a copy of the CLIENT 's Code of Conduct. COMPANY and its employees, agents or contractors shall immediately notify the CLIENT of any violations or suspected violations of the Code of Conduct, including violations of laws governing Medicare, Medicaid and other federal healthcare programs, by notifying the CLIENT 's Compliance Hotline as set forth in the Code of Conduct.

**11. HIPAA** COMPANY through its employees and contractors will perform the services or functions set forth elsewhere in this Agreement. Subject to the terms and conditions of this Agreement and the HIPAA Privacy Standards, COMPANY may use Protected Health Information as reasonably necessary for the purposes herein, for the proper management and administration of the AGENCY's business, employee or contractors providing services hereunder will comply in all material respects with the HIPAA Privacy Standards when using or disclosing Protected Health Information, which it receives directly, or indirectly from CLIENT or in performance of its duties under this Agreement. In furtherance of the foregoing, COMPANY agrees to: only use PHI to the extent necessary to perform its duties pursuant to this Agreement, and to use and disclose the minimum PHI necessary to perform its duties pursuant to this Agreement and to reasonably safeguard the PHI from being used or disclosed except as permitted. COMPANY agrees to promptly notify CLIENT if COMPANY or its employees or contractors breach any statutory or regulatory requirement to protect patient PHI.

**12. Eligibility to Participate in Federal Health Care Programs.** The Parties represent and warrant to each other that: (a) neither it nor any of its representatives contractors, or employees, who will provide services to or on behalf of CLIENT , are currently excluded, suspended, debarred or otherwise ineligible to participate in federal health care programs, including the Medicare and Medicaid programs; and (b) neither it nor any of its representatives contractors or employees who will provide services pursuant to the Agreement, have been convicted of a criminal offense related to the provision of health care items or services that would lead to mandatory exclusion from federal health care programs, but have not yet been excluded. COMPANY agrees, on an annual basis, to check its list of all employees, agents, and subcontractors against the OIG/GSA exclusion list to assure that employees, agents, and subcontractors are not currently excluded, suspended, debarred or otherwise ineligible to participate in federal health care programs, including the Medicare and Medicaid programs; and (b) neither it nor any of its representatives who will provide services pursuant to the Agreement, have been convicted of a criminal offense related to the provision of health care items or services that would lead to mandatory exclusion from federal health care programs, but have not yet been excluded.

13. Compliance with Laws. Both parties agree to comply fully with all applicable federal,

state, and local laws, rules and regulations, including, but not limited to (i) Title VI of the Civil Rights Act of 1964; (ii) Section 504 of the Rehabilitation Act of 1973; (iii) the Age Discrimination Act of 1975, and related requirements imposed by the Department of Health and Human Services (45 C.F.R., Par. 80); (iv) the OSHA Bloodborne Pathogen Standard, as may be amended from t i m e to time; (v) the Fair and Accurate Credit Transactions Act of 2003 (FACTA) and its implementing regulations

14.  **Books and Records** For the purpose of implementing Section 1861 (v)(l)(I) of the Social Security Act, as amended, and any written regulations thereto, Company agrees b comply with statutory requirements governing the maintenance of documents to verify the cost of services rendered under this Agreement as follows:  Until the expiration of four years after the furnishing of such services pursuant to this Agreement, Company shall make available, upon written request by the Facility and/or the Secretary of Health and Human Services, or upon request of any of their duly authorized representatives, the contracts, books, documents and records of Company that are necessary to certify the nature and extent of such costs, and; if Company carries out any of the duties of this Agreement through a subcontract, with a value or cost of Ten Thousand Dollars ($10,000) or more over a twelve (12) month period, with a related organization [as that term is defined with regard to a provider in Title 42 of the Code of Federal Regulations 405.427(b)], such subcontract shall contain a clause to the effect that until the expiration of four years after the furnishing of such services pursuant to such subcontract, the related, organization shall make available, upon written request, the subcontract, and books, documents and records of such organization that are necessary to verify the nature and extent of such costs.

15. **Right to Dismiss** Facility has the right to dismiss any Company Temporary Medical Staff that it deems to be incompetent or that is putting the health and safety of residents at issues by their acts or omissions. If the Facility dismisses a Company Temporary Medical Staff under either of conditions in the foregoing sentence it shall only be required to pay Company for the actual hours worked by the Company Temporary Medical Staff.  Facility shall give notice to Company no later than the next business day after dismissing a Company Temporary Medical Staff.

16.  **Confidentiality.**   The Company agrees not to disclose or otherwise make available Confidential Information of the Client or Client's employees to any third party without the prior written consent of the Client. Company agrees to keep the Confidential Information in strictest confidence, using the same degree of care that it normally uses to protect its own proprietary information, but no less than reasonable care. Confidential information means all information belonging to the Client or the Client's employees or provided to the Company by the Client or the Client's employees that is not known generally to the public or the Client's competitors. Confidential Information includes, but is not limited to: software, documentation, reports, manuals, letters, programs, data, information regarding financial reporting, inventory tracking and other computer-based systems, Client's employees' personally identifiable information, services, research, trade secrets and all information provided by the Client or the Client's employees and related to Client's employees, including without limitation, any information provided or learned by Medical Staff during the medical screening process that Medical Staff will perform for Client per Schedule 1. Company agrees to inform Medical Staff of its obligations of confidentiality and to indemnify Client for any breach of the Confidentiality obligations by any Medical Staff. Company agrees that all the Services performed under this Agreement shall be performed in compliance with HIPAA and all other applicable laws, rules, and regulations governing the privacy and security of protected health information (PHI).

**17.**                **Mutual Indemnification.** The parties agree to indemnify, defend and hold harmless each other and their respective officers, directors, members, managers, employees, agents, affiliates, parent, subsidiaries, permitted successors and assignees from and against any and all claims, counterclaims, suits, demands, actions, causes of action, damages, penalties, injuries, setoffs, liens, attachments, judgments, debts, costs, expenses (including without limitation attorneys' fees and

expenses) or other liabilities of every character whatsoever (collectively, "Liabilities") for any third party claims arising out of acts of negligence, gross negligence or willful misconduct of the other party, or its agents or employees.

  **18.**   <u>**Severability**</u>**.** It is the intent of the parties that if any court of competent jurisdiction determines that any provision of this Agreement is invalid or unenforceable, then such invalidity or unenforceability shall have no effect on the other provisions hereof, which shall remain valid, binding and enforceable and in full force and effect, and, to the extent allowed by law.

  **19.**   <u>**Governing law**</u>**.** This Agreement is to be governed by the current laws of the State of Georgia where the Services are rendered without giving effect to provisions thereof regarding conflict of laws.

  **20.**   <u>**Entire Agreement and Amendment.**</u> This Agreement (including any documents referred to herein) sets forth the entire understanding of the parties hereto with respect to the subject matter contemplated hereby. Any and all previous agreements and understandings between or among the parties regarding the subject matter hereof, whether written or oral, are superseded by this Agreement. This Agreement shall not be amended or modified except by a written instrument duly executed and signed by both parties.

  **21**    <u>**Waiver.**</u> If either Party fails to enforce any provision contained within this Agreement, it shall not be construed as a waiver or limitation of that Party's right to subsequently enforce and compel strict compliance with every provisions of this Agreement.

  **22.**   <u>**Costs and Attorney's Fees**</u>**.** If possible, any disputes hereunder shall be settled amicably. The Company shall be entitled to recover reasonable attorney's fees and costs in connection with the collection of invoices for Services and Expenses.

  **23.**    <u>Miscellaneous.</u>

   A.    The undersigned Parties warrant each to the other that they possess the legal authority to enter into this Agreement.

   B.    If signed by the parties document shall be transmitted via facsimile or email, it is agreed that facsimile or email will create and constitute the original legally binding and enforceable Agreement.

       **Signature Page Follows**

Agreed:

Company: Keys Medical Staffing, LLC

Print Name:_____Christy Collins_____

Title:___COO_____

Signature:_Christy Collins_____

Date——————————————————————

Client: Rome Operating Company LLC d/b/a Rome Health and
Rehabilitation Center

Print Name:_____Jennifer Lynn_____

Title: Administrator

Signature:_____J Lynn_____

Date_____11-8-21_____



## Cost Proposal

| Positions (Job Titles) | Maximum Fully-Loaded Hourly Staff Rates |
|---|---|
| Nurses: RN. LPN. CNA | |
| RN | $63.00 |
| LPN | $54.00 |
| CNA | $40.00 |

*** Weekends, holidays, and overtime hourly rate: x 1.5hr

*** Shift differential will be an additional $1 per shift

**Base bill rate increase hourly for the following Position:**

| | |
|---|---|
| ***Assistant Director of Nursing | $16.40/hr |
| ***Unit Manager | $9.00/hr |
| ***Unit Supervisor | $6.20/hr |



**KEYS MEDICAL**
STAFFING AND SERVICES
PO Box 10612
Chicago, IL 60610
Office: 312-888-9022

**Staffing Services Agreement**

The purpose of this agreement ("Agreement") is to set forth the agreement between SSC Canton Operating Company LLC d/b/a Brian Center Health & Rehabilitation/Canton ("The Client") and ***Keys Medical Staffing, LLC.***, *an Illinois limited liability company* (The "Company"), Client and the Company are sometimes collectively referred to as "Parties" and individually as "Party".

The Client desires to retain the Company to provide qualified temporary medical staffing services ("TMS") to the Client at its facility. Temporary medical staffing (TMS) shall be defined to be registered nurses, licensed vocational or practical nurses or certified nurses' aides. Accordingly, the Parties mutually agree:

**1) Services.** As requested by Client, the Company will provide TMS to provide Services at the facility in accordance with their license or certification and in accordance with the Client policies and procedures, all TMS will be screened to ensure they have the following: i) unencumbered license or registration to practice in the State of Georgia (Rn, LPN/LVN or CNA), ii) I-9 documentation and E-Verify completed that demonstrates Company's Temporary Medical Staff's right to work in the United States, iii) a clear criminal background check, iv) ten panel drug screen, v) negative TB test, vi) Hepatitis B declination or vaccine series and vii) all other skills testing required under applicable State law.

**2)    Temporary Medical Staff.** As requested, and approved by Client, the Company will assign individuals ("TMS") to provide TMS to the Client during the time periods as provided in Schedule 1. The Company is responsible for credentialing of Medical Staff and will provide credential details to Client. Medical Staff members will be under direct supervision of the Company in the performance of their duties. Company will solely determine the method, details, and means of performing the Services to be provided to Client, including ensuring that the Medical Staff is using the proper PPE while performing the Services; provided that such Medical Staff shall at all times comply with all applicable laws, rules, and regulations, all applicable Client policies, procedures, and protocols, and all applicable professional standards. Client shall not control the manner or determine the method of accomplishing such Services; provided that such Services shall at all times be performed in compliance with all applicable laws, rules, and regulations, all applicable Client policies, procedures, and protocols, and all applicable professional standards. Client shall be entitled to exercise a broad general power of supervision and control over the results of the Services performed by Service Provider and to ensure the Services are being provided per Client's expectations.

**3)    Equipment**. The Client shall provide all equipment, supplies, personal protective equipment (PPE) and other items necessary for Medical Staff to render the Services described in Schedule 1. The Parties understand that all Medical Staff members are employees of the Company and shall not be deemed employees of the Client. Accordingly, all compensation, including salary and any benefits paid to Medical Staff members shall be the Company's responsibility. Company agrees that its Medical Staff will be qualified health professionals sufficiently trained to perform the Services for Client, and that each will have a level of

skill in the area commensurate with the requirements of the Services it will be performing and that its Medical Staff will perform the work in a good workmanlike manner consistent with generally accepted industry standards and in compliance with all applicable local, state and federal laws.

**4)**     **Reliance.** The Client and the Company acknowledge and agree, each to the other, that while the Company will make reasonable efforts to provide TMS to meet the Client's staffing needs, the Company shall not be liable for any loss or damage sustained by the Client due to the Company's inability to provide TMS.

**5)**     **Term.** The term of this Agreement shall be for one year, provided however either party may terminate this Agreement with fifteen (15) days written notice to the other Party at any time with or without cause.

**6)**     **Compensation.** The Client shall pay the Company for the Services provided by Medical Staff at the daily rates set forth in Schedule 1.

**7)**     **Billing.** The Company will bill the Client for services on a weekly basis for TMS provided during such week. All invoices shall be submitted weekly to APADMIN@savasc.com Any invoice not received within sixty days (60) of the date the services were rendered at the email address above shall not be the responsibility of Client to pay. All invoices timely received the payment is due after thirty (30) days of receipt of the submitted invoice. With respect to a Medical Staff member who becomes a full time, part time or temporary employee of Client, upon commencement of employment, the Company will bill the Client a Placement Fee pursuant to the provisions of Section 9 below. Payment for Services and Placement Fees shall be due no later than fifteen (15) business days after the Billing Date or date of the invoice for Placement Fees. Past due invoices will accrue interest at the annual rate eighteen percent (18%) per month on the outstanding unpaid balance.

**8)**     **Insurance.** The Company shall maintain Worker's Compensation Insurance coverage for all Company's employees in the statutory amount and General Liability Insurance with a minimum amount of one million dollars ($1,000,000.00) per occurrence. The Company shall maintain professional liability insurance covering all Temporary Medical Staff (TMS) assigned to Client's facility in the amount of One million per occurrence ($1,000,000.00) and three million in the aggregate ($3,000,000.00). The Company shall provide the Client with a Certificate of Insurance upon the Client's request. The Company hereby agrees to indemnify and hold the Client harmless from and against any and all losses, damages, claims, causes of action and expenses connected therewith (including reasonable attorney fees), caused or asserted to have been caused, directly or indirectly, by or as a result of any claim for Worker's Compensation asserted by Medical Staff member and against any third party claims asserting a professional liability claim based upon the negligence of any Temporary Medical Staff assigned to Client's facility. .

**9)**     **Placement Fee.** If Client hires a Medical Staff member to become a full time, part time or temporary employee, the Client shall pay the Company a placement fee ("Placement Fee") as follows:

a. For a full-time and part time employee, the Placement Fee shall be equal to twenty-five percent (25%) of the annual salary payable to such employee.

b. For a temporary employee, the Placement Fee shall be equal to twenty-five percent (25%) of the salary payable to such employee during the temporary employment period. The term temporary employee shall mean a Medical Staff member hired by the Client for a period less than twelve (12) months.

c. For each full-time, part time and temporary employee offered and employed by Client, the Client shall deliver a certificate signed by its chief financial officer or equivalent. The certificate shall certify the annual salary payable to such Medical Staff member employed as a full time or part time employee, and in the case of a temporary employee such employee's salary payable during the temporary employment period.

d. The Company shall have the right to examine the payroll records of any Medical Staff member who is placed by the Client and becomes a full-time or part time employee or temporary employee of the Client.

e. Client acknowledges and agrees that the Placement Fee is nonrefundable.

**10. Compliance Program and Code of Conduct.** COMPANY acknowledges that it is aware that CLIENT 's compliance program is designed to promote compliance by the CLIENT and its covered contractors, including COMPANY with the requirements of Medicare, Medicaid and other federal health care programs. COMPANY further acknowledges that it has received a copy of the CLIENT 's Code of Conduct. COMPANY and its employees, agents or contractors shall immediately notify the CLIENT of any violations or suspected violations of the Code of Conduct, including violations of laws governing Medicare, Medicaid and other federal healthcare programs, by notifying the CLIENT 's Compliance Hotline as set forth in the Code of Conduct.

**11. HIPAA** COMPANY through its employees and contractors will perform the services or functions set forth elsewhere in this Agreement. Subject to the terms and conditions of this Agreement and the HIPAA Privacy Standards, COMPANY may use Protected Health Information as reasonably necessary for the purposes herein, for the proper management and administration of the AGENCY's business, employee or contractors providing services hereunder will comply in all material respects with the HIPAA Privacy Standards when using or disclosing Protected Health Information, which it receives directly, or indirectly from CLIENT or in performance of its duties under this Agreement. In furtherance of the foregoing, COMPANY agrees to: only use PHI to the extent necessary to perform its duties pursuant to this Agreement, and to use and disclose the minimum PHI necessary to perform its duties pursuant to this Agreement and to reasonably safeguard the PHI from being used or disclosed except as permitted. COMPANY agrees to promptly notify CLIENT if COMPANY or its employees or contractors breach any statutory or regulatory requirement to protect patient PHI.

**12. Eligibility to Participate in Federal Health Care Programs.** The Parties represent and warrant to each other that: (a) neither it nor any of its representatives contractors, or employees, who will provide services to or on behalf of CLIENT , are currently excluded, suspended, debarred or otherwise ineligible to participate in federal health care programs, including the Medicare and Medicaid programs; and (b) neither it nor any of its representatives contractors or employees who will provide services pursuant to the Agreement, have been convicted of a criminal offense related to the provision of health care items or services that would lead to mandatory exclusion from federal health care programs, but have not yet been excluded. COMPANY agrees, on an annual basis, to check its list of all employees, agents, and subcontractors against the OIG/GSA exclusion list to assure that employees, agents, and subcontractors are not currently excluded, suspended, debarred or otherwise ineligible to participate in federal health care programs, including the Medicare and Medicaid programs; and (b) neither it nor any of its representatives who will provide services pursuant to the Agreement, have been convicted of a criminal offense related to the provision of health care items or services that would lead to mandatory exclusion from federal health care programs, but have not yet been excluded.

13. Compliance with Laws. Both parties agree to comply fully with all applicable federal, state, and local laws, rules and regulations, including, but not limited to (i) Title VI of the Civil Rights Act of 1964; (ii) Section 504 of the Rehabilitation Act of 1973; (iii) the Age Discrimination Act of 1975, and related requirements imposed by the Department of Health and Human Services (45 C.F.R., Par. 80); (iv) the OSHA Bloodborne Pathogen Standard, as may be amended from time to time; (v) the Fair and Accurate Credit Transactions Act of 2003 (FACTA) and its implementing regulations

14. **Books and Records** For the purpose of implementing Section 1861 (v)(l)(I) of the Social Security Act, as amended, and any written regulations thereto, Company agrees b comply with statutory requirements governing the maintenance of documents to verify the cost of services rendered under this Agreement as follows: Until the expiration of four years after the furnishing of such services pursuant to this Agreement, Company shall make available, upon written request by the Facility and/or the Secretary of Health and Human Services, or upon request of any of their duly authorized representatives, the contracts, books, documents and records of Company that are necessary to certify the nature and extent of such costs, and; if Company carries out any of the duties of this Agreement through a subcontract, with a value or cost of Ten Thousand Dollars ($10,000) or more over a twelve (12) month period, with a related organization [as that term is defined with regard to a provider in Title 42 of the Code of Federal Regulations 405.427(b)], such subcontract shall contain a clause to the effect that until the expiration of four years after the furnishing of such services pursuant to such subcontract, the related, organization shall make available, upon written request, the subcontract, and books, documents and records of such organization that are necessary to verify the nature and extent of such costs.

15. **Right to Dismiss** Facility has the right to dismiss any Company Temporary Medical Staff that it deems to be incompetent or that is putting the health and safety of residents at issues by their acts or omissions. If the Facility dismisses a Company Temporary Medical Staff under either of conditions in the foregoing sentence it shall only be required to pay Company for the actual hours worked by the Company Temporary Medical Staff. Facility shall give notice to Company no later than the next business day after dismissing a Company Temporary Medical Staff.

16. **Confidentiality.** The Company agrees not to disclose or otherwise make available Confidential Information of the Client or Client's employees to any third party without the prior written consent of the Client. Company agrees to keep the Confidential Information in strictest confidence, using the same degree of care that it normally uses to protect its own proprietary information, but no less than reasonable care. Confidential information means all information belonging to the Client or the Client's employees or provided to the Company by the Client or the Client's employees that is not known generally to the public or the Client's competitors. Confidential Information includes, but is not limited to: software, documentation, reports, manuals, letters, programs, data, information regarding financial reporting, inventory tracking and other computer-based systems, Client's employees' personally identifiable information, services, research, trade secrets and all information provided by the Client or the Client's employees and related to Client's employees, including without limitation, any information provided or learned by Medical Staff during the medical screening process that Medical Staff will perform for Client per Schedule 1. Company agrees to inform Medical Staff of its obligations of confidentiality and to indemnify Client for any breach of the Confidentiality obligations by any Medical Staff. Company agrees that all the Services performed under this Agreement shall be performed in compliance with HIPAA and all other applicable laws, rules, and regulations governing the privacy and security of protected health information (PHI).

17. **Mutual Indemnification.** The parties agree to indemnify, defend and hold harmless each other and their respective officers, directors, members, managers, employees, agents, affiliates, parent, subsidiaries, permitted successors and assignees from and against any and all claims, counterclaims, suits, demands, actions, causes of action, damages, penalties, injuries, setoffs, liens,

attachments, judgments, debts, costs, expenses (including without limitation attorneys' fees and expenses) or other liabilities of every character whatsoever (collectively, "Liabilities") for any third party claims arising out of acts of negligence, gross negligence or willful misconduct of the other party, or its agents or employees.

18.    **Severability.** It is the intent of the parties that if any court of competent jurisdiction determines that any provision of this Agreement is invalid or unenforceable, then such invalidity or unenforceability shall have no effect on the other provisions hereof, which shall remain valid, binding and enforceable and in full force and effect, and, to the extent allowed by law.

19.    **Governing law.** This Agreement is to be governed by the current laws of the State of Georgia where the Services are rendered without giving effect to provisions thereof regarding conflict of laws.

20.    **Entire Agreement and Amendment.** This Agreement (including any documents referred to herein) sets forth the entire understanding of the parties hereto with respect to the subject matter contemplated hereby. Any and all previous agreements and understandings between or among the parties regarding the subject matter hereof, whether written or oral, are superseded by this Agreement. This Agreement shall not be amended or modified except by a written instrument duly executed and signed by both parties.

21    **Waiver.** If either Party fails to enforce any provision contained within this Agreement, it shall not be construed as a waiver or limitation of that Party's right to subsequently enforce and compel strict compliance with every provisions of this Agreement.

22.    **Costs and Attorney's Fees.** If possible, any disputes hereunder shall be settled amicably. The Company shall be entitled to recover reasonable attorney's fees and costs in connection with the collection of invoices for Services and Expenses.

23.    Miscellaneous.

A.    The undersigned Parties warrant each to the other that they possess the legal authority to enter into this Agreement.

B.    If signed by the parties document shall be transmitted via facsimile or email, it is agreed that facsimile or email will create and constitute the original legally binding and enforceable Agreement.

**Signature Page Follows**

Agreed:

Company: Keys Medical Staffing, LLC

Print Name:____Christy Collins_____

Title: ___COO_____

Signature: _Christy Collins_____

May 5, 2021

Date————————————————————

Client: SSC Canton Operating Company LLC d/b/a Brian Center Health & Rehabilitation/Canton

Print Name: _ANNICA STANSBERRY_____

Title: _Interim Administrator_____

Signature: _____

Date_____5/10/21_____



# KEYS MEDICAL
## STAFFING AND SERVICES

## Cost Proposal

| Positions (Job Titles) | Maximum Fully-Loaded Hourly Rates 2020 | Maximum Fully-Loaded Hourly Rates 2021 |
|---|---|---|
| Nurses: RN. LPN. CNA | | |
| RN | $62.00 | $62.48 |
| LPN | $41.50 | $42.06 |
| CNA | $30.65 | $31.02 |



*** Weekends, holidays, and overtime hourly rate: x 1.5hr

*** Shift differential will be an additional $1 per shift



**KEYS MEDICAL**
STAFFING AND SERVICES
PO Box 10612
Chicago, IL 60610
Office: 312-888-9022

**Staffing Services Agreement**

The purpose of this agreement ("Agreement") is to set forth the agreement between SSC Austell Operating Company LLC d/b/a Anderson Mill Health and Rehabilitation Center ("The Client") and **Keys Medical Staffing, LLC.**, *an Illinois limited liability company* (The "Company"), Client and the Company are sometimes collectively referred to as "Parties" and individually as "Party".

The Client desires to retain the Company to provide qualified temporary medical staffing services ("TMS") to the Client at its facility. Temporary medical staffing (TMS) shall be defined to be registered nurses, licensed vocational or practical nurses or certified nurses' aides. Accordingly, the Parties mutually agree:

1) **Services.** As requested by Client, the Company will provide TMS to provide Services at the facility in accordance with their license or certification and in accordance with the Client policies and procedures, all TMS will be screened to ensure they have the following: i) unencumbered license or registration to practice in the State of Georgia (Rn, LPN/LVN or CNA), ii) I-9 documentation and E-Verify completed that demonstrates Company's Temporary Medical Staff's right to work in the United States, iii) a clear criminal background check, iv) ten panel drug screen, v) negative TB test, vi) Hepatitis B declination or vaccine series and vii) all other skills testing required under applicable State law.

2) **Temporary Medical Staff.** As requested, and approved by Client, the Company will assign individuals ("TMS") to provide TMS to the Client during the time periods as provided in Schedule 1. The Company is responsible for credentialing of Medical Staff and will provide credential details to Client. Medical Staff members will be under direct supervision of the Company in the performance of their duties. Company will solely determine the method, details, and means of performing the Services to be provided to Client, including ensuring that the Medical Staff is using the proper PPE while performing the Services; provided that such Medical Staff shall at all times comply with all applicable laws, rules, and regulations, all applicable Client policies, procedures, and protocols, and all applicable professional standards. Client shall not control the manner or determine the method of accomplishing such Services; provided that such Services shall at all times be performed in compliance with all applicable laws, rules, and regulations, all applicable Client policies, procedures, and protocols, and all applicable professional standards. Client shall be entitled to exercise a broad general power of supervision and control over the results of the Services performed by Service Provider and to ensure the Services are being provided per Client's expectations.

3) **Equipment.** The Client shall provide all equipment, supplies, personal protective equipment (PPE) and other items necessary for Medical Staff to render the Services described in Schedule 1. The Parties understand that all Medical Staff members are employees of the Company and shall not be deemed employees of the Client. Accordingly, all compensation, including salary and any benefits paid to Medical Staff members shall be the Company's responsibility. Company agrees that its Medical Staff will be qualified health professionals sufficiently trained to perform the Services for Client, and that each will have a level of

skill in the area commensurate with the requirements of the Services it will be performing and that its Medical Staff will perform the work in a good workmanlike manner consistent with generally accepted industry standards and in compliance with all applicable local, state and federal laws.

**4)    Reliance.** The Client and the Company acknowledge and agree, each to the other, that while the Company will make reasonable efforts to provide TMS to meet the Client's staffing needs, the Company shall not be liable for any loss or damage sustained by the Client due to the Company's inability to provide TMS.

**5)    Term.** The term of this Agreement shall be for one year, provided however either party may terminate this Agreement with fifteen (15) days written notice to the other Party at any time with or without cause.

**6)    Compensation.** The Client shall pay the Company for the Services provided by Medical Staff at the daily rates set forth in Schedule 1.

**7)    Billing.** The Company will bill the Client for services on a weekly basis for TMS provided during such week. All invoices shall be submitted weekly to APADMIN@savasc.com Any invoice not received within sixty days (60) of the date the services were rendered at the email address above shall not be the responsibility of Client to pay.  All invoices timely received the payment is due after thirty (30) days of receipt of the submitted invoice. With respect to a Medical Staff member who becomes a full time, part time or temporary employee of Client, upon commencement of employment, the Company will bill the Client a Placement Fee pursuant to the provisions of Section 9 below. Payment for Services and Placement Fees shall be due no later than fifteen (15) business days after the Billing Date or date of the invoice for Placement Fees. Past due invoices will accrue interest at the annual rate eighteen percent (18%) per month on the outstanding unpaid balance.

**8)    Insurance.** The Company shall maintain Worker's Compensation Insurance coverage for all Company's employees in the statutory amount and General Liability Insurance with a minimum amount of one million dollars ($1,000,000.00) per occurrence.   The Company shall maintain professional liability insurance covering all Temporary Medical Staff (TMS) assigned to Client's facility in the amount of One million per occurrence ($1,000,000.00) and three million in the aggregate ($3,000,000.00). The Company shall provide the Client with a Certificate of Insurance upon the Client's request. The Company hereby agrees to indemnify and hold the Client harmless from and against any and all losses, damages, claims, causes of action and expenses connected therewith (including reasonable attorney fees), caused or asserted to have been caused, directly or indirectly, by or as a result of any claim for Worker's Compensation asserted by Medical Staff member and against any third party claims asserting a professional liability claim based upon the negligence of any Temporary Medical Staff assigned to Client's facility. .

**9)    Placement Fee.** If Client hires a Medical Staff member to become a full time, part time or temporary employee, the Client shall pay the Company a placement fee ("Placement Fee") as follows:

a.  For a full-time and part time employee, the Placement Fee shall be equal to twenty-five percent (25%) of the annual salary payable to such employee.

b.  For a temporary employee, the Placement Fee shall be equal to twenty-five percent (25%) of the salary payable to such employee during the temporary employment period. The term temporary employee shall mean a Medical Staff member hired by the Client for a period less than twelve (12) months.

c. For each full-time, part time and temporary employee offered and employed by Client, the Client shall deliver a certificate signed by its chief financial officer or equivalent. The certificate shall certify the annual salary payable to such Medical Staff member employed as a full time or part time employee, and in the case of a temporary employee such employee's salary payable during the temporary employment period.

d. The Company shall have the right to examine the payroll records of any Medical Staff member who is placed by the Client and becomes a full-time or part time employee or temporary employee of the Client.

e. Client acknowledges and agrees that the Placement Fee is nonrefundable.

**10. <u>Compliance Program and Code of Conduct</u>.** COMPANY acknowledges that it is aware that CLIENT 's compliance program is designed to promote compliance by the CLIENT and its covered contractors, including COMPANY with the requirements of Medicare, Medicaid and other federal health care programs. COMPANY further acknowledges that it has received a copy of the CLIENT 's Code of Conduct. COMPANY and its employees, agents or contractors shall immediately notify the CLIENT of any violations or suspected violations of the Code of Conduct, including violations of laws governing Medicare, Medicaid and other federal healthcare programs, by notifying the CLIENT 's Compliance Hotline as set forth in the Code of Conduct.

**11. <u>HIPAA</u>** COMPANY through its employees and contractors will perform the services or functions set forth elsewhere in this Agreement. Subject to the terms and conditions of this Agreement and the HIPAA Privacy Standards, COMPANY may use Protected Health Information as reasonably necessary for the purposes herein, for the proper management and administration of the AGENCY's business, employee or contractors providing services hereunder will comply in all material respects with the HIPAA Privacy Standards when using or disclosing Protected Health Information, which it receives directly, or indirectly from CLIENT or in performance of its duties under this Agreement. In furtherance of the foregoing, COMPANY agrees to: only use PHI to the extent necessary to perform its duties pursuant to this Agreement, and to use and disclose the minimum PHI necessary to perform its duties pursuant to this Agreement and to reasonably safeguard the PHI from being used or disclosed except as permitted. COMPANY agrees to promptly notify CLIENT if COMPANY or its employees or contractors breach any statutory or regulatory requirement to protect patient PHI.

**12. <u>Eligibility to Participate in Federal Health Care Programs.</u>** The Parties represent and warrant to each other that: (a) neither it nor any of its representatives contractors, or employees, who will provide services to or on behalf of CLIENT , are currently excluded, suspended, debarred or otherwise ineligible to participate in federal health care programs, including the Medicare and Medicaid programs; and (b) neither it nor any of its representatives contractors or employees who will provide services pursuant to the Agreement, have been convicted of a criminal offense related to the provision of health care items or services that would lead to mandatory exclusion from federal health care programs, but have not yet been excluded. COMPANY agrees, on an annual basis, to check its list of all employees, agents, and subcontractors against the OIG/GSA exclusion list to assure that employees, agents, and subcontractors are not currently excluded, suspended, debarred or otherwise ineligible to participate in federal health care programs, including the Medicare and Medicaid programs; and (b) neither it nor any of its representatives who will provide services pursuant to the Agreement, have been convicted of a criminal offense related to the provision of health care items or services that would lead to mandatory exclusion from federal health care programs, but have not yet been excluded.

13. Compliance with Laws. Both parties agree to comply fully with all applicable federal, state, and local laws, rules and regulations, including, but not limited to (i) Title VI of the Civil Rights Act of 1964; (ii) Section 504 of the Rehabilitation Act of 1973; (iii) the Age Discrimination Act of 1975, and related requirements imposed by the Department of Health and Human Services (45 C.F.R., Par. 80); (iv) the OSHA Bloodborne Pathogen Standard, as may be amended from t i m e to time; (v) the Fair and Accurate Credit Transactions Act of 2003 (FACTA) and its implementing regulations

14. **Books and Records** For the purpose of implementing Section 1861 (v)(l)(I) of the Social Security Act, as amended, and any written regulations thereto, Company agrees b comply with statutory requirements governing the maintenance of documents to verify the cost of services rendered under this Agreement as follows:  Until the expiration of four years after the furnishing of such services pursuant to this Agreement, Company shall make available, upon written request by the Facility and/or the Secretary of Health and Human Services, or upon request of any of their duly authorized representatives, the contracts, books, documents and records of Company that are necessary to certify the nature and extent of such costs, and; if Company carries out any of the duties of this Agreement through a subcontract, with a value or cost of Ten Thousand Dollars ($10,000) or more over a twelve (12) month period, with a related organization [as that term is defined with regard to a provider in Title 42 of the Code of Federal Regulations 405.427(b)], such subcontract shall contain a clause to the effect that until the expiration of four years after the furnishing of such services pursuant to such subcontract, the related, organization shall make available, upon written request, the subcontract, and books, documents and records of such organization that are necessary to verify the nature and extent of such costs.

15. **Right to Dismiss** Facility has the right to dismiss any Company Temporary Medical Staff that it deems to be incompetent or that is putting the health and safety of residents at issues by their acts or omissions. If the Facility dismisses a Company Temporary Medical Staff under either of conditions in the foregoing sentence it shall only be required to pay Company for the actual hours worked by the Company Temporary Medical Staff.  Facility shall give notice to Company no later than the next business day after dismissing a Company Temporary Medical Staff.

16. **Confidentiality.**   The Company agrees not to disclose or otherwise make available Confidential Information of the Client or Client's employees to any third party without the prior written consent of the Client. Company agrees to keep the Confidential Information in strictest confidence, using the same degree of care that it normally uses to protect its own proprietary information, but no less than reasonable care. Confidential information means all information belonging to the Client or the Client's employees or provided to the Company by the Client or the Client's employees that is not known generally to the public or the Client's competitors. Confidential Information includes, but is not limited to: software, documentation, reports, manuals, letters, programs, data, information regarding financial reporting, inventory tracking and other computer-based systems, Client's employees' personally identifiable information. services, research, trade secrets and all information provided by the Client or the Client's employees and related to Client's employees, including without limitation, any information provided or learned by Medical Staff during the medical screening process that Medical Staff will perform for Client per Schedule 1. Company agrees to inform Medical Staff of its obligations of confidentiality and to indemnify Client for any breach of the Confidentiality obligations by any Medical Staff. Company agrees that all the Services performed under this Agreement shall be performed in compliance with HIPAA and all other applicable laws, rules, and regulations governing the privacy and security of protected health information (PHI).

<u>17.</u>            **Mutual Indemnification.** The parties agree to indemnify, defend and hold harmless each other and their respective officers, directors, members, managers, employees, agents, affiliates, parent, subsidiaries, permitted successors and assignees from and against any and all claims, counterclaims, suits, demands, actions, causes of action, damages, penalties, injuries, setoffs, liens,

attachments, judgments, debts, costs, expenses (including without limitation attorneys' fees and expenses) or other liabilities of every character whatsoever (collectively, "Liabilities") for any third party claims arising out of acts of negligence, gross negligence or willful misconduct of the other party, or its agents or employees.

18.    **Severability.** It is the intent of the parties that if any court of competent jurisdiction determines that any provision of this Agreement is invalid or unenforceable, then such invalidity or unenforceability shall have no effect on the other provisions hereof, which shall remain valid, binding and enforceable and in full force and effect, and, to the extent allowed by law.

19.    **Governing law.** This Agreement is to be governed by the current laws of the State of Georgia where the Services are rendered without giving effect to provisions thereof regarding conflict of laws.

20.    **Entire Agreement and Amendment.** This Agreement (including any documents referred to herein) sets forth the entire understanding of the parties hereto with respect to the subject matter contemplated hereby. Any and all previous agreements and understandings between or among the parties regarding the subject matter hereof, whether written or oral, are superseded by this Agreement. This Agreement shall not be amended or modified except by a written instrument duly executed and signed by both parties.

21    **Waiver.** If either Party fails to enforce any provision contained within this Agreement, it shall not be construed as a waiver or limitation of that Party's right to subsequently enforce and compel strict compliance with every provisions of this Agreement.

22.    **Costs and Attorney's Fees.** If possible, any disputes hereunder shall be settled amicably. The Company shall be entitled to recover reasonable attorney's fees and costs in connection with the collection of invoices for Services and Expenses.

23.    Miscellaneous.

A.    The undersigned Parties warrant each to the other that they possess the legal authority to enter into this Agreement.

B.    If signed by the parties document shall be transmitted via facsimile or email, it is agreed that facsimile or email will create and constitute the original legally binding and enforceable Agreement.

**Signature Page Follows**

Agreed:

Company: Keys Medical Staffing, LLC

Print Name:_____Christy Collins_____

Title:__COO_____

Signature:__*Christy Collins*_____

Date_____11/8/21_____

Client: SSC Austell Operating Company LLC d/b/a Anderson Mill Health and Rehabilitation Center

Print Name:__Matthew Moore_____

Title: Administrator

Signature:____Matthew Moore_____

Date____11/8/21_____



KEYS MEDICAL
STAFFING AND SERVICES

## Cost Proposal

| Positions (Job Titles) | Maximum Fully-Loaded Hourly Staff Rates |
|---|---|
| Nurses: RN, LPN, CNA | |
| RN | $63.00 |
| LPN | $54.00 |
| CNA | $40.00 |

\*\*\* Weekends, holidays, and overtime hourly rate: x 1.5hr

\*\*\* Shift differential will be an additional $1 per shift

**Base bill rate increase hourly for the following Position:**

| | |
|---|---|
| \*\*\*Assistant Director of Nursing | $16.40/hr |
| \*\*\*Unit Manager | $9.00/hr |
| \*\*\*Unit Supervisor | $6.20/hr |